**Robert P. KROPP, Plaintiff-Appellant,**

v.

**Sylvester A. ZIEBARTH, a/k/a Silver A. Ziebarth and Carl A. Ziebarth, husband and wife, and Cleon Striegel, Defendants-Appellees.**

No. 76-1967.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1977.

Decided June 2, 1977.

---

John R. Davidson, Billings, Mont., for appellant; Fred E. Whisenand, Williston, N. D., on brief.

David L. Peterson, Bismarck, N. D., for appellee; Robert Edd Lee, Billings, Mont., on brief.

Before CLARK, Associate Justice, Retired,* and HEANEY and WEBSTER, Circuit Judges.

HEANEY, Circuit Judge.

Robert Kropp appeals from the District Court's dismissal of his complaint, with prejudice, pursuant to Fed.R.Civ.P. 37(b)(2) for failure to comply with an order requiring answers to certain interrogatories.[1] We reverse and remand the action to the District Court because we find that the District Court abused its discretion in imposing the drastic sanction.

This action arises out of a sale on November 8, 1972, by Kropp to the defendants, of over 1,000 head of cattle, many of which

---

* TOM C. CLARK, Associate Justice, Retired, Supreme Court of the United States, sitting by designation.

1. Kropp also seeks to appeal the District Court's denial of his motion for the production of income tax returns of the defendants-appellees Sylvester and Carol Ziebarth and Cleon Striegel. The income tax returns were requested as relevant to issues raised by the defendants' counterclaim. Since the counterclaim is still pending, the District Court's order denying production is not a final order appealable under 28 U.S.C. § 1291. Nor is it an appealable interlocutory order under 28 U.S.C. § 1292(b). *See generally* 8 Wright and Miller, *Federal Practice and Procedure: Civil* § 2006 (1970). Accordingly, we are without jurisdiction to consider this issue.

were exotic breeds. The contract provided that the total purchase price of $815,000 was to be paid as follows: a $115,000 down-payment and four annual installments of $204,337 in 1973, 1974, 1975 and 1976, with interest at 6½%. Kropp retained a security interest in the cattle and their progeny. Ziebarth also gave Kropp a second mortgage on his ranch. The cattle were to remain on Kropp's land for a period of time and he was to provide feed for the cattle. In return, Kropp was to be paid $15,000 a year. The contract further provided that, if the exotic cattle were not registered with the respective breed associations at the time of the sale, then Kropp would do everything necessary to register them. Only the down-payment and the first annual payment were made.

Kropp delivered breeding records to the defendants. The defendants believed that the records were inadequate and undertook a blood-typing program to aid in the identification and registration of the cattle. As the identification process was completed, the defendants prepared applications for registration. After Kropp's signature was obtained, a number of applications for registration were submitted to the breed associations.[2]

The defendants made the following sales of the cattle purchased from Kropp:[3]

| | Number Cattle Sold | Proceeds |
|---|---|---|
| 1973 | 347 | $257,408 |
| 1974 | 389 | $310,761 |
| 1975 | 357 | $103,902 |
| TOTAL | 1,093 | $672,071 |

None of the sales were made with Kropp's prior approval despite the fact he had only waived his security interest in the cattle with respect to the first 400-head sold. All the proceeds from the sales made in these years were retained by the defendants.

Kropp filed this action on October 2, 1975, to recover $30,000 for the care and maintenance of the cattle while they remained upon his property in addition to the balance of $655,100 still due under the contract. He also sought foreclosure of the liens on the cattle and on the Ziebarth ranch. In their answer, the defendants admitted entering into the contract but alleged that Kropp breached the contract because he failed to do everything necessary to register the cattle, because some of the cattle were not qualified for registration with their respective breed associations as warranted,[4] and

2. According to the defendants' answers to Kropp's interrogatories, the following exotic cattle were contracted for, received and registered:

| Breed and Breed Percentages | Number Contracted For | Number Received | Number Registered |
|---|---|---|---|
| ¾–blood Simmental heifer calves | 50 | 45 | 44 |
| ¾–blood Simmental bull calves | 40 | 40 | — |
| ½–blood Simmental cows | 283 | 320 | 289 |
| ½–blood Maine-Anjou cows | 75 | 43 | 43 |
| ½–blood Limousin cows | 40 | 80 | 80 |
| TOTAL | 488 | 528 | 456 |

The remainder of the cattle sold by Kropp were commercial cows of various ages.

3. In 1972, Kropp sold approximately 160 yearling steers on behalf of the defendants. Kropp retained the proceeds and applied them towards the purchase price.

4. The contract provided that:

It is understood that if at the time this agreement is signed the various "exotic" breeds * * * are not registered in the

because he breached the cattle care and maintenance provisions of the contract. The defendants claim that many of the registrations are suspect because they are supported by inadequate breeding records and are thus subject to revocation by the various breed associations. The breed associations maintain only a random sampling program to corroborate parentage and to check breeding records by blood-typing; verification is not made with respect to every registration certificate issued. The bylaws of the associations provide that a registration certificate may be voided if any error is discovered with respect to the supporting breeding records through the random sampling program or as the result of an inquiry initiated by a prospective buyer. At oral argument, Kropp's counsel indicated that inquiries were in process with respect to the sires of eight of the Simmental cows for whom registration certificates had been issued. The defendants subsequently filed a counterclaim seeking $1.5 million in damages and alleging that Kropp breached the contract warranty that the exotic cattle would qualify for registration with the respective breed associations. They alleged that they were forced to accept lower prices for the cattle because of the suspect registrations and that the delays in registration caused them to lose sales at the peak of the exotic cattle market in 1973 and 1974. They further alleged that Kropp refused to accept their offer to return the cattle which caused them to expend large sums of money for the care and upkeep of the cattle.

Interrogatories were served and answered by both sides.[5] The defendants were dissatisfied with Kropp's answers to their first set of interrogatories. The principal source of the dissatisfaction arose out of Kropp's responses to a series of interrogatories which requested Kropp to review breeding records attached to the interrogatories, which the defendants claimed were the records Kropp turned over to them, and to provide the information needed for complete registration with the various breed associations. It is the defendants' position that Kropp should have either provided the required information or admitted that his breeding records provided an inadequate basis for registration of the cattle. In effect, the defendants requested an admission of facts which would have established a breach of warranty. It was Kropp's position that he provided all the information needed for registration that he had in his possession, that he did not retain copies of the breeding records turned over to the defendants and that, therefore, he was unable to state whether the records attached to the interrogatories included all the records he turned over to the defendants. The defendants moved to compel answers under Fed.R.Civ.P. 37(a). Kropp did not respond to the motion. It was granted on May 10, 1976, and, at a subsequent hearing, Kropp was directed to either fully answer the interrogatories or demonstrate that he had already done so.

■ Kropp filed his second set of answers July 9, 1976. The defendants again found Kropp's answers to be unsatisfactory for substantially the same reasons. Kropp's deposition was also taken on July 9th. During the deposition, Kropp was asked to furnish information which had not been the subject of prior interrogatories.[6] The infor-

---

appropriate associations that control use and breeding of said breeds, and further, that said breeds are not registered in the names of Buyers, then Seller shall forthwith do any and all things necessary to register said breeds in the names of Buyers if this reasonably can be done and with the appropriate associations, and Seller further warrants and agrees that said "exotic" breeds shall qualify for registration under the rules and regulations of the respective associations.

5. Kropp filed his first set of interrogatories on November 24, 1975, and the defendants' answers were filed on January 6, 1976. The de-

fendants filed their first set of interrogatories on February 6, 1976. Kropp's answers were filed on March 25, 1976, after receiving an extension of time in which to file his answers.

6. At his deposition, Kropp was asked: (1) for information and records with respect to the 1969 insemination of the cattle by a Dr. Gustafson; (2) for information with respect to the 1970 and 1971 insemination program; (3) when he became a member of the Simmental, Maine-Anjou and Limousin Associations; (4) who was in charge of the laboratory at the University of California, at Davis, where the blood-typing tests were analyzed; (5) for information about

mation was not provided promptly notwithstanding an exchange of correspondence between counsel.[7] The information was finally provided on September 24, 1976, after oral argument had been held on the defendants' motion for dismissal pursuant to Fed.R.Civ.P. 37(b)(2).

On September 10, 1976, the defendants moved to strike Kropp's complaint pursuant to Fed.R.Civ.P. 37(b)(2).[8] The District Court granted the motion because of the prolonged "thwarting" of the discovery process. It recognized that "courts generally are reluctant to apply the drastic sanction of dismissal * * * for mere procedural derelictions."

 While there have been delays and a lack of the kind of cooperation needed to make the discovery rules work, we are unable to agree that the sanction of dismissal was appropriate.[9] The District Court has broad discretion to impose the various sanctions set forth in Fed.R.Civ.P. 37(b)(2) for failure to comply with a prior court order under Fed.R.Civ.P. 37(a). *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 994–995 (8th Cir. 1975); 8 Wright & Miller, *Federal Practice and Procedure: Civil* § 2289 at 790 (1970). It may treat the failure to comply with a discovery order as contempt of court, require payment of reasonable attorney fees, stay the action until the discovery order has been complied with, require admissions, allow designated evidence, strike pleadings, or enter a dismissal or a default judgment. Dismissal, however, is one of the most severe of all the sanctions available and is only to be resorted to when the "failure to comply has been due to * * * willfulness, bad faith, or any fault of petitioner." *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958); *Nat. Hockey League v. Metro Hockey Club*, 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed.2d 747, 749 (1976); *General Dynamics Corp. v. Selb Manufacturing Co.*, 481 F.2d 1204, 1211 (8th Cir. 1973), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974).

 The record does not show that Kropp's failure to comply was willful or in

blood-typing done at Kropp's ranch; (6) for information as to the size and breed of Kropp's present herd and for information as to other sales of exotic cattle by Kropp; (7) for the cattle vaccination records kept by Drs. Gustafson and Kauk; and (8) for the date of a meeting in Kropp's attorney's office where an alleged oral agreement with respect to the procedure for registration was made. In our judgment, the first two requests for information were obviously material to the issue of the breach of the warranty that the cattle would be eligible for registration.

7. It should be noted that the defendants never sought an order pursuant to Fed.R.Civ.P. 37(a) to compel the production of the additional information. For sanctions to be imposed under Fed.R.Civ.P. 37(b)(2), there must first be an order compelling discovery under Rule 37(a). Thus, sanctions cannot be imposed under Rule 37(b)(2) for the delay in producing the additional information. The delay is, however, an example of Kropp's abuse of the discovery process.

8. The defendants also moved for entry of a default judgment against Kropp on their counterclaim. The District Court denied this motion.

9. We recognize that:

There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the District Court.

But, here as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. *Nat. Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642–643, 96 S.Ct. 2778, 2780–2781, 49 L.Ed.2d 747, 751 (1976).

In *Nat. Hockey League v. Metro. Hockey Club, supra*, the District Court had found "flagrant bad faith" on the part of the plaintiffs and "callous disregard" by plaintiff's counsel of their responsibilities to the court and the opponents. *Ibid.*, 427 U.S. at 641, 96 S.Ct. at 2780, 49 L.Ed.2d at 750. We believe the instant case is distinguishable because there has been no finding of bad faith.

bad faith.[10] Instead, a review of the record reveals that there is some merit to Kropp's position that he was unable to respond more fully to the defendants' interrogatories than he did. Dismissal is not authorized under Fed.R.Civ.P. 37 when the failure to comply is the result of inability rather than willfulness or bad faith. *Societe Internationale v. Rogers, supra,* 357 U.S. at 212, 78 S.Ct. 1087. That does not mean that Kropp will benefit from his inability as, at trial, he will have the burden of proving that the breeding records were sufficient to qualify the exotic cattle for registration with the respective breed associations, or that the defendants were not damaged by any inadequacy in the breeding records. *See Societe Internationale v. Rogers, supra* at 212–213, 78 S.Ct. 1087; *Dorsey v. Academy Moving & Storage, Inc.,* 423 F.2d 858, 861 (5th Cir. 1970). On the basis of this record, Kropp's inability to respond more fully is a problem relating to the adequacy of his proof. It is not, however, a willful or bad faith abuse of the discovery process that should preclude him from reaching the merits of his claim. On remand, the District Court may consider the imposition of less extreme sanctions set forth in Fed.R.Civ.P. 37(b)(2)(A)–(E), one of which might be to prohibit Kropp from introducing evidence other than that already received as to the adequacy of the breeding records. *See* 4A Moore, *Federal Practice,* ¶ 37.03[2.–3] (2d ed. rev. 1976).

Accordingly, the case is remanded to the District Court with instructions to reinstate Kropp's complaint and to take such other action that it deems proper and consistent with this opinion.

---

**10.** Moreover, this Circuit recently held:

> Prior to dismissal or entering a default judgment, fundamental fairness should require a district court to enter an order to show cause and hold a hearing, if deemed necessary, to determine whether assessment of costs and attorney fees or even an attorney's citation for contempt would be a more just and effective sanction. Dismissal and entry of a default judgment should be the rare judicial act. *Edgar v. Slaughter,* 548 F.2d 770, 773 (8th Cir. 1977).

No hearing was held in this case by the District Court. Nor is there any indication that consideration was given to the imposition of less severe sanctions.