**John E. ENGLISH and Francis Dorenbach, Personal Representative of the Estate of Mary E. English, Deceased, Appellees,**

v.

**21ST PHOENIX CORPORATION and Hanson Development Company, a New Jersey Corporation, Appellants.**

**No. 78–1221.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 19, 1978.

Decided Jan. 10, 1979.

Rehearing and Rehearing En Banc Denied Feb. 12, 1979.

---

Sidney Feldshuh (argued), New York City, Richard L. Schmeling, Lincoln, Neb., and Stephan Garber, New York City, on brief, for appellants.

Rollin R. Bailey of Bailey, Polsky, Huff, Cada & Todd, Lincoln, Neb., for appellees.

Before GIBSON, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

GIBSON, Chief Judge.

Appellants, the Hanson Development Company, a Delaware corporation,[1] and the Hanson Development Company, a New Jer-sey corporation, appeal from entry of summary judgment in the amount of $670,000 in favor of appellees as beneficiaries of a lease guarantee against appellants as the guarantors. Jurisdiction in the district court was established by diversity of citizenship. 28 U.S.C. § 1332. On appeal, the Hanson companies challenge the District Court's[2] jurisdiction and the imposition of various sanctions for their failure to comply with certain discovery orders and contend that the amount of the judgment was excessive.

In 1969, three brothers formed the Delaware corporation for the principal purpose of developing and promoting shopping centers in various states. The Hanson brothers continue to own this corporation as sole stockholders of the JEH Development Company. The New Jersey corporation, carrying the same corporate name, was organized in 1972, and is a wholly-owned subsidiary of the Delaware corporation. This New Jersey corporation shares not only the name, but the business purpose, officers and address of the Delaware corporation. The Hanson brothers also own 70% of S & H Shopping Centers, Inc. (hereinafter referred to as S & H), another corporation formed for the purpose of developing shopping centers that shares the address of the Hanson companies. This latter corporation entered into an agreement with the Delaware corporation whereby in exchange for its providing services as an experienced developer, the Delaware corporation would receive 70% of the profits on any shopping centers developed by S & H.

In 1971, the Hanson brothers became interested in some Nebraska property located in Grand Island. One of the brothers inspected the site and called the owners of the property, Grand Island Mall, Inc., regarding the leasing of the property as a shopping center site. Negotiations resulted in the execution on May 24, 1972, by Grand

1. During the course of litigation the Hanson Development Company, a Delaware corporation, changed its name to 21st Phoenix Corporation. For convenience, this party will be referred to as the Delaware corporation.

2. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

Island Mall, Inc. and Donald Hanson as vice-president of the Delaware corporation, of an agreement providing for a 99 year lease. The agreement included addenda amending portions of the basic agreement. One amendment provided that the lease would "be entered into by and between Grand Island Mall, Inc. and S & H Shopping Centers, Inc., a Delaware corporation, and guaranteed by The Hanson Development Company, rather than entered into as Hanson Development Company as Tenant." Donald L. Hanson signed both the original agreement and the addenda as vice-president of the Delaware corporation.

On October 18, 1972, Grand Island Mall, Inc. leased its property to EES Grand Island Associates Ltd. This limited partnership assigned all its interest in the lease to S & H, its general partner. Thereafter, S & H mortgaged the property to United Jersey Mortgage Company in order to finance a loan of $3,200,000 for the development of the shopping center, and in 1973 began constructing improvements and leasing space to retail businesses. This project became known as the Grand Island Mall and was one of three shopping centers started by S & H in Nebraska in 1972.

In accordance with the terms of its agreement with S & H, the Delaware corporation provided services to aid the development of these Nebraska projects. It maintained a regional office in Kansas City, Missouri, and personnel from this office traveled to Nebraska to inspect construction, review specifications, meet with tenants, and generally facilitate rapid and orderly progress. Another office opened in Omaha, Nebraska, and the Delaware corporation paid the salaries of the four employees working out of this office. These employees primarily handled contacting prospective tenants, leasing space and coordinating construction for these tenants. As consideration for the services rendered on behalf of the three shopping centers in Nebraska, the Delaware corporation received in excess of $1.7 million. In addition to providing services, the Delaware corporation in the course of its business of promoting and developing shopping centers guaranteed the performance of some of the agreements and undertakings of S & H with regard to these projects. The Hanson Development Company guaranteed the full performance of the lease of the Grand Island property, including the obligation of the lessee to make mortgage payments on the mortgage in favor of the United Jersey Mortgage Company. This guarantee was signed by John F. Hanson, president of the Hanson Development Company, and imprinted with the seal of the Delaware corporation. On August 20, 1974, John E. English and his sister, Mary E. English, traded property with Grand Island Mall, Inc., and thereby succeeded to all interests in the Grand Island property previously held by Grand Island Mall, Inc. Subsequently, S & H defaulted on the mortgage payments. In an action in the United States District Court for the District of Nebraska, with the Englishes and the Hanson company as parties defendant, the United Jersey Mortgage Company obtained a judgment of foreclosure as a result of which the land was sold at forced sale.

On October 12, 1976, the Englishes filed the complaint for damages in the present action, naming the Delaware corporation and S & H as defendants. Neither defendant responded, and a default judgment was entered against both. The Delaware corporation later entered an appearance and the District Court granted its motion to set aside entry of the default. In the course of discovery, the Englishes learned of the existence of the New Jersey corporation with the identical name and address, and amended the complaint to add it as a party defendant.

Discovery commenced immediately upon filing of the complaint, when plaintiffs-appellees served upon the Delaware corporation interrogatories and a request for production and copying of documents, but discovery did not proceed unimpeded. Lack of cooperation, inadequate responses, and dilatoriness on the part of the appellants hampered the orderly progression of discovery. Numerous times, the District Court issued orders to compel discovery, and also granted many of the appellants' motions for ex-

tensions of time. Finally, after appellants' continued failure to comply with court-ordered deadlines for discovery, the District Court imposed sanctions designed to establish as admitted those facts which appellees sought to establish by the discovery denied them. Thereafter, the District Court granted appellees' motion for summary judgment on the issue of liability and the issue of damages was tried to the court. Appellants contest the summary judgment on the basis that the District Court abused its discretion by its imposition of sanctions, and that sanctions cannot be utilized to establish jurisdictional facts. It also contests the amount of damages awarded.

■ Pursuant to Fed.R.Civ.P.37(b)(2)(A),[3] on December 27, 1978, the District Court entered an order establishing that the Delaware corporation was doing business in Nebraska and its involvement was substantial enough to give the court personal jurisdiction. The history of the discovery proceedings leading to this order amply supports the District Court's exercise of discretion.

On January 18, 1977, appellees moved to compel answers to the first set of interrogatories. In response, the court ordered that answers or objections be made by February 11, 1977. On that date appellants moved for an extension of time until the 14th of February. The court granted this extension, but received nothing on the 14th. Instead, on February 22, appellants filed vague and unresponsive answers together with a motion for an order granting an extension of time for the filing of the answers until the 22nd. Thereafter the parties entered into a stipulation that provided that the Delaware corporation would correct improper answers and properly frame its objections to interrogatories by May 23,

1977, and would answer fully and completely all interrogatories not objected to by June 9, 1977. On May 18, 1977, the court approved this stipulation and ordered compliance therewith. Appellant practically ignored the deadlines established by the stipulation, and on May 25 filed three corrected but unsworn answers and objections to eight of the interrogatories. On June 23, 1977, appellees moved for an order to show cause why the defendants should not be held in contempt of court because of their failure to comply with the orders, rules and procedures of the court and their failure to provide discovery. On August 10, 1977, appellees moved for an order treating the issue of personal jurisdiction as established for the reason that appellants were deliberately avoiding and delaying discovery of the facts pertaining to this issue by responding to interrogatories in an unresponsive, inconsistent, evasive, and incomplete manner. On August 17, the court denied appellees' motions and made further orders providing for the progression of discovery. On August 19, 1977, appellees again moved to compel answers to the first set of interrogatories. The court responded in a detailed memorandum and order requiring answers to specific questions and clarification of specific discrepancies to be made by September 6, 1977. On September 14, 1977, appellants filed a few answers. Appellees filed a second set of interrogatories on October 6, 1977. The Delaware corporation again ignored the schedule for discovery set out in Rule 33(a), Fed.R.Civ.P., and appellees on November 16, 1977, moved to compel answers. In turn, the Delaware corporation moved for a protective order. Following a hearing on these motions, on November 28, 1977, the court ordered the Delaware corporation to answer certain questions by December 5, 1977. On December

---

**3.** Fed.R.Civ.P. 37(b)(2)(A) states:

2. *Sanctions by Court in Which Action is Pending.* If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court in which

the action is pending may make such orders in regard to the failure as are just, and among others the following:
(A) an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order[.]

13, 1977, appellees moved to impose sanctions for failure to comply with the November 28 order. Finally, on December 27, the court imposed the sanction establishing personal jurisdiction.[4]

■ Fed.R.Civ.P. 37(b) provides comprehensively for sanctions for failure to obey discovery orders, and the imposition of these sanctions should not be reversed unless there has been an abuse of discretion. *Denton v. Mr. Swiss of Missouri, Inc.,* 564 F.2d 236, 239 (8th Cir. 1977); *Fox v. Studebaker-Worthington, Inc.,* 516 F.2d 989, 993–94 (8th Cir. 1975); 4A Moore's Federal Practice ¶ 37.08 at 37–112–13 (2d ed. 1978). The court below carefully followed the procedures outlined in Rule 37. Exercising its discretion, it granted extensions of time for discovery, held hearings on discovery motions, entered orders to compel discovery, and finally, after the continued failure of appellants to respect discovery orders, it imposed a sanction drawn narrowly to establish as admitted the fact that the Delaware corporation had contacts with Nebraska sufficient to support in personam jurisdiction.

■ The imposition of this sanction did not deny the Delaware corporation its fifth amendment rights to due process.[5] In accord with the sound policy favoring the use of less severe and harsh sanctions than dismissal or default, the District Court carefully tailored its order to address the specific information sought by discovery.[6] *See Edgar v. Slaughter,* 548 F.2d 770, 773 (8th Cir. 1977).

■ The proceedings leading to the imposition of the sanction establishing the Delaware corporation as the guarantor were substantially the same as that leading to the sanction regarding jurisdiction. Appellants obstructed the discovery of certain documents by the use of dilatory and contumacious tactics. Appellees sought these documents to prove that the Delaware corporation and not the New Jersey corporation made the guarantee.[7] The District

---

4. Although sanctions were not applied to the New Jersey corporation, the defendants in effect confess judgment against that corporation and claim that the New Jersey corporation was the guarantor instead of the Delaware corporation. The New Jersey corporation apparently has no assets. This acknowledgment serves as a basis for establishing in personam jurisdiction over the New Jersey corporation in showing participatory activities by the corporations in financing and constructing this shopping center in Nebraska.

5. Appellants' argument that the District Court lacked jurisdiction to enter the sanction order is equally meritless. Unlike subject matter jurisdiction, in personam jurisdiction may be obtained by actions of a party amounting to a waiver, and a court has jurisdiction to enter an order finding a waiver. *United States v. Gajewski,* 419 F.2d 1088, 1091 (8th Cir. 1969), cert. denied, 397 U.S. 1040, 90 S.Ct. 1361, 25 L.Ed.2d 651 (1970); 2 Moore's Federal Practice ¶ 4.02[3] at R–48 (2d ed. 1978). The same principles give jurisdiction to the District Court to enter a sanction order. It is established beyond cavil that a court has jurisdiction to determine jurisdiction, and a party cannot hope to avoid the jurisdiction of a court by concealing evidence regarding its activities in the forum state.

6. We also note that the exercise of in personam jurisdiction over the Delaware corporation does not offend traditional notions of fair play and substantial justice. The complete record below reveals that the Delaware corporation had sufficient minimum contacts with Nebraska. *International Shoe Company v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). It invoked the benefits and protections of Nebraska law by reason of its activities regarding the shopping centers, *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and entered into a contract with Grand Island Mall, Inc. regarding lease of property in Nebraska that obviously had a "substantial connection" with the forum state, *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). These contacts with Nebraska are substantial and intimately related to this cause of action instituted by residents of Nebraska. The exercise of jurisdiction was entirely consistent with the requirements of due process. *See Caesar's World, Inc. v. Spencer Foods, Inc.,* 498 F.2d 1176, 1180–81 (8th Cir. 1974).

7. The appellees claimed that both corporations made the guarantee but that if only one had made it then the Delaware corporation was the guarantor. During the course of discovery, appellants took the position that the New Jersey corporation had made the guarantee. Since the New Jersey corporation was a financially insecure, wholly-owned subsidiary of the Delaware corporation, this conduct reveals a situa-

Court repeatedly ordered the production of these documents.[8] Finally, after holding a hearing and finding that no good cause was shown for the failure to produce the documents as ordered, it imposed the sanction. The District Court did not abuse its discretion.

 Appellants also challenge the amount of the damages awarded. They contend that the damages assessed against the guarantor must be limited to the amount of the default judgment against the principal, S & H, and that the evidence does not support even that amount. The joint and several default judgment rendered against S & H and The Hanson Development Company was in the sum of $593,802. The Delaware corporation chose to have this judgment against it set aside and go to trial. At trial, expert testimony from a real estate appraiser established that appellees suffered a loss of $670,000 due to the default of S & H on the mortgage payments. The record clearly supports the District Court's judgment for damages in this amount.

We have reviewed the remaining arguments of appellants and find them to be without merit. The District Court's findings of fact are not clearly erroneous and it applied correct principles of law.

All motions are overruled except that all costs shall be taxed against the appellants.

Judgment affirmed.

---

tion fraught with possibilities for fraudulent schemes. These two corporations, with the same name, officers and address, one having substantial assets and the other essentially bankrupt, could easily be confused by persons dealing with them. It appears that the owners and officers attempted fraudulently to manage this confusion to their personal benefit. They cannot now argue that the finding against the Delaware corporation renders improper a judgment against the New Jersey corporation for which they confessed an obligation.

8. On November 2, 1977, the District Court clearly informed appellants of the consequences of non-compliance. Its order stated in part:

> If the defendants, The Hanson Development Company, a New Jersey corporation, and The Hanson Development Company, a Delaware corporation, fail to deliver the items mentioned in subparagraph A of this order within the time ordered, an order will be entered, absent a showing of good cause to the contrary, that the guarantees identified as exhibits C, D, and N, which are attached to the first amended complaint, are the guarantees of the defendant The Hanson Development Company, a Delaware corporation, and that fact shall be taken to be established for the purpose of this action in accordance with the claims of the plaintiffs.

In addition to the above court order the following facts were shown:

(1) The guarantee bore the corporate seal of the Delaware corporation.

(2) The officers signing the guarantee were officers of the Delaware corporation.

(3) The Delaware corporation had an interest in S & H Shopping Centers, Inc. as referred to in the guarantee.

(4) The financial statement furnished in connection with the guarantee was that of the Delaware corporation.