LACLEDE GAS COMPANY, Appellee,

v.

G. W. WARNECKE CORPORATION, Appellant.

George W. WARNECKE, Appellant,

v.

LACLEDE GAS COMPANY, Appellee.

Nos. 78–1493, 78–1623.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1979.

Decided Aug. 10, 1979.

Pat L. Simons of Susman, Stern, Heifetz, Lurie, Sheehan, Popkin & Chervitz, St. Louis, Mo., for appellant; Richard J. Sheehan, St. Louis, Mo. and Gordon G. Hartweger, Clayton, Mo., on the brief.

John Gianoulakis of Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, Mo., for appellee; John A. Klobasa, St. Louis, Mo., on the brief.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

Appellants G. W. Warnecke Corporation in No. 78–1493 and George W. Warnecke in No. 78–1623 appeal from two adverse judgments in the district court on Warnecke's claims against Laclede Gas Company (Laclede) for breach of an implied warranty of fitness and breach of a maintenance contract in connection with three natural gas-fired reciprocating engines which provided power to a building owned by Warnecke.[1] In No. 78–1493, Warnecke claims error in the dismissal of its counterclaim against Laclede on the latter's action to secure payment for services rendered under the maintenance agreement. The counterclaim was dismissed by the district court without prejudice as a sanction under Rule 37, F.R. Civ.P. *Laclede Gas Co. v. G. W. Warnecke Corp.*, 78 F.R.D. 502, 504 (E.D.Mo.1978).[2] The cause then proceeded to trial before a jury on Laclede's complaint alone. The jury awarded Laclede $23,667.64 and the Court entered judgment thereon.

In No. 78–1623 Warnecke appeals from summary judgment on essentially the same cause of action which constituted the dismissed counterclaim. *Warnecke v. Laclede Gas Co.*, 455 F.Supp. 444, 446 (E.D.Mo.1978). The underlying complaint had been filed as a separate action after dismissal of the counterclaim. On Laclede's motion, the district court[3] ruled that the jury's finding in the first action under the district court's instructions that Laclede had performed its duties under the maintenance contract "in a workmanlike manner" collaterally estopped Warnecke in the second action from claiming breach of that contract and breach of implied warranty also arising from the contract.

These consolidated appeals therefore raise two basic issues: (1) whether the district court in No. 78–1493 abused its discretion by dismissing Warnecke's counterclaim without prejudice as a discovery sanction; and (2) whether as a result of the jury verdict in No. 78–1493 Warnecke was collaterally estopped on its claims in No. 78–1623. Both actions were brought under the district court's diversity jurisdiction and there appears to be no dispute that the substantive law of Missouri governs.

We affirm both judgments.

## I.

In March 1971 Mr. Warnecke purchased an office building in St. Louis and his corporation entered into a maintenance agreement with Laclede to maintain the three reciprocating engines. The engines provided power to the building and were referred to in the contract as the "Total Energy Plant." Laclede promised to furnish

complete maintenance service for the Plant, including labor, materials, parts,

---

* The Honorable William C. Hanson, Senior District Judge, Southern District of Iowa, sitting by designation.

1. Mr. Warnecke owned the building in question and it was managed by the G. W. Warnecke Corporation. The corporation is owned by Warnecke as sole shareholder, and there is no dispute that the interests of the corporation and Mr. Warnecke are in privity for the purposes of these appeals. In this opinion "War-

necke" refers to either the corporation or the individual as appropriate.

2. The Honorable John F. Nangle, United States District Judge, Eastern District of Missouri.

3. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri, presided in the second action.

lubrication, oil, filters, etc. and rebuilding or replacing all equipment as necessary, and including labor and materials necessary to maintain an attractive appearance of the Plant.

During the first three years of Warnecke's ownership only one of the three engines had to be on line. Engine 1 and engine 2 alternated as the on-line engine. In July 1974 a new tenant was acquired for the building and the power supply had to be increased, requiring two engines to be on line at all times. Warnecke therefore authorized an overhaul of engine 2.

Laclede hired the Charles Equipment Company (Charles) to conduct the overhaul, consisting of rebuilding cylinder heads, replacing various parts, and remachining the engine's crankshaft, connecting rod bearings, and main bearings. The overhaul did not improve the engine's performance and, indeed, allegedly had quite the opposite effect. Bolts began to break, water and oil leaks occurred, and toward the latter part of the year the engine began to vibrate severely. By March 1975 a decision was made to shut down engine 2 for further overhaul as its reliability was in doubt.

A decision had previously been made to also overhaul engine 3. Again Charles worked on the overhaul which was similar to the overhaul given engine 2. The overhaul of engine 3 additionally involved the purchase of a new crankshaft.

As with engine 2, the overhaul of engine 3 allegedly was counterproductive: Bolts began to break, the engine vibrated excessively, the crankcase was cracked, and there was a question as to whether the new crankshaft had been properly manufactured. Because of the persistent problems with the two engines, Warnecke alleged

that it was forced to incur the expense of converting to electrical power.

On January 7, 1976 Laclede filed a three-count complaint seeking approximately $46,000 in overdue payments under the maintenance agreement.[4] Warnecke answered and counterclaimed alleging breach of the maintenance agreement and implied warranty of parts and services provided in connection with the contract. Warnecke sought $500,000 in each of two counts. Laclede in turn filed a third-party complaint seeking indemnity from Dresser Industries, Inc., as manufacturer of parts used in the repair of Warnecke's engines, and Charles as the supplier of expertise and labor for the overhaul of the engines.

Discovery did not proceed smoothly, particularly as it related to the issue of Warnecke's damages and expert witnesses. On April 12, 1978 Laclede and the third-party defendants moved the district court to dismiss Warnecke's counterclaim with prejudice, or enter an order precluding Warnecke from presenting evidence of damages and expert evidence at the trial scheduled for April 24, 1978.

The parties continue to dispute the underlying facts and the degree, if any, of Warnecke's contumacy. We have carefully reviewed the record, however, and are convinced that the district court's factual findings and conclusions are not clearly erroneous in any material respect. The district court found that Warnecke had failed to adequately answer Laclede's interrogatory seeking an itemized list of damages, as implemented by the court's order compelling discovery and a separate omnibus pretrial order. The court concluded that Warnecke's efforts were "woefully inadequate".

---

**4.** More accurately, there were two maintenance agreements and a period of time between, during which Laclede worked without a formal contract, though for the purposes of this appeal there appears to be no dispute that the first maintenance agreement described Laclede's obligations during the pertinent period of time. Count I of Laclede's complaint sought recovery of $29,817.36 due under the first maintenance agreement which was in effect from March 5, 1971 to March 5, 1975. Count II sought recovery of $15,371.84 on a quantum meruit theory for services rendered between March 6, 1975 and May 21, 1975, the period in which there was no express contract. Count III sought $691.69 due under a second maintenance agreement in effect between May 22, 1975 and August 22, 1975. The second agreement sought to explicitly disclaim express or implied warranties, but no issue with respect to such disclaimer is before us on appeal.

78 F.R.D. at 503. Further, a pretrial conference revealed

. . . it is clear that defendant *does* intend to prepare an itemized list for trial since it has indicated that it will use a large pad at trial to prepare a list of damages for the jury. (Emphasis added.)

*Id.*

The district court also took Warnecke to task for failing to adequately or timely respond to Laclede's interrogatory about expert witnesses. 78 F.R.D. at 503. *See* Rule 26(b)(4), F.R.Civ.P. Lastly, the district court found that Warnecke, in response to an interrogatory of Dresser Industries, had named three individuals as the individuals who computed Warnecke's damages; but two weeks before trial, in compliance with a pretrial order, Warnecke listed nine witnesses in addition to expert testimony on the issue of damages. *Id.* at 503–04.

·Because Warnecke had failed to follow the letter and spirit of the discovery rules in the Federal Rules of Civil Procedure as well as the court's pretrial orders, and such compliance as was provided was untimely and occurred approximately two weeks prior to trial rendering it unfair to Laclede and the third-party defendants to proceed on Warnecke's counterclaim, the district court dismissed the counterclaim and third-party complaint without prejudice. 78 F.R.D. at 504. *See* Rules 37(b)(2), (c), (d), F.R.Civ.P. The more severe sanctions requested by Warnecke's party-opponents were rejected.

The case proceeded to trial on Laclede's complaint alone. The jury returned a verdict for $23,667.64 and as a predicate thereto, specifically found under the court's instructions that Laclede performed services "in a workmanlike manner."

■ A district court has discretion under Rule 37, F.R.Civ.P., to impose appropriate sanctions for the failure to make discovery. It follows that a Rule 37 sanction is not grounds for reversal unless it constitutes an abuse of discretion. *See National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *English v. 21st Phoenix Corp.,* 590 F.2d 723, 728 (8th Cir. 1979). The district court dismissed Warnecke's counterclaim under Rule 37(d). Rule 37(d) applies only where a failure to answer interrogatories amounts to a total failure to respond. *See Fox v. Studebaker-Worthington, Inc.,* 516 F.2d 989, 995 (8th Cir. 1975). It authorizes district courts to "make such orders in regard to the failure as are just," by reference including specifically the sanction provided in Rule 37(b)(2)(C) of dismissal of all or part of an action. Rule 37(b)(2)(C) allows dismissal as a sanction for failure to comply with the discovery orders of the trial court. A prior order, however, is essential. *See Schleper v. Ford Motor Co.,* 585 F.2d 1367, 1371 (8th Cir. 1978).

■ Rule 37(b) was not the appropriate rule for the district court to proceed under since prior to the motion to dismiss or preclude evidence Warnecke had responded, albeit inadequately, to the interrogatories in issue. *See* 4A J. Moore & J. Lucas, Moore's Federal Practice ¶ 37.05, at 37–102 (1978). The district court, though, also dismissed the counterclaim because Warnecke had failed to obey the court's pretrial discovery orders, most particularly a February 18, 1977 order granting in part Laclede's motion to compel a response to its interrogatory seeking an itemized list of damages and an omnibus pretrial order requiring the parties to submit "an itemized list of special damages." Under these circumstances, the district court was empowered to dismiss the counterclaim directly under Rule 37(b)(2)(C) for failure to obey an order permitting discovery. *See Fox v. Studebaker-Worthington, Inc.,* 516 F.2d at 994.

■ Though Rule 37 permits dismissal for failure to obey an order permitting discovery or failure to respond to discovery requests, the sanction is obviously more severe than other available sanctions permitted by Rule 37 and is therefore appropriate only under limited circumstances. *See Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *English v. 21st Phoenix Corp.,* 590 F.2d at 728; *Kropp v. Ziebarth,* 557 F.2d 142, 146

(8th Cir. 1977); *Edgar v. Slaughter*, 548 F.2d 770, 772–73 (8th Cir. 1977). Dismissal is not appropriate where the discovery failure "has been due to inability and not to willfulness, bad faith, or any fault of" the sanctioned party. *Societe Internationale v. Rogers*, 357 U.S. at 212, 78 S.Ct. at 1096.

■ We believe the district court acted here within its discretion for two reasons. First, the failure to answer interrogatories as directed was not due to mere inability as the district court implicitly indicated and it is evident that the court believed Warnecke was guilty of some degree of fault. *Cf. National Hockey League v. Metropolitan Hockey Club*, 427 U.S. at 642, 96 S.Ct. 2778; *General Dynamics Corp. v. Selb Manufacturing Co.*, 481 F.2d 1204, 1211 (8th Cir. 1973), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974) (both cases involving a similar fact pattern and in which dismissals *with* prejudice were upheld on appeal). Second, the district court's dismissal of the counterclaim was without prejudice, the court specifically observing that its sanction "would conceivably allow defendant to refile the claim." 78 F.R.D. at 504. Judge Nangle's use of the word "conceivably" was prudent, because defective parts and a failure to perform under the maintenance agreement could well be, and it turned out, was employed as a defense to Laclede's suit to recover payment for services including the parts. Dismissal without prejudice was therefore appropriate procedure because, as Judge Nangle apparently realized, depending on the factual issues decided in connection with Laclede's complaint, Warnecke may or may not have been able to subsequently maintain its counterclaim as a separate action. In any event, we do not believe Warnecke suffered prejudice, if any, beyond what the discovery failures warranted, and this is not a case in which a party was deprived of his day in court. *See Fox v. Studebaker-Worthington, Inc.*, 516 F.2d at 996. In practical effect, the district court did little more than sever the counterclaim because Warnecke's discovery conduct had made it prejudicial to Laclede and the third-party defendants to proceed, particularly on the issue of damages. *See* 78 F.R.D. at 504; *cf.* Rule 42(b), F.R.Civ.P.

Because the dismissal of Warnecke's counterclaim was within the district court's discretion, we affirm the judgment in No. 78–1493.

II.

On April 21, 1978, the day after the counterclaim was dismissed in No. 78–1493, Warnecke filed the counterclaim as a separate complaint. The two pleadings were virtually identical except that the complaint sought $1,000,000 in damages under each of the breach of contract and implied warranty counts. Laclede subsequently filed a motion to dismiss Warnecke's complaint, or in the alternative, for summary judgment. The motion was predicated on the prior verdict and judgment in Laclede's action to recover money due under the maintenance agreement. The second action, docketed as No. 78–1623 on appeal, was assigned to Chief Judge Meredith.

Laclede argued that in the prior action the issue of its performance of services under the contract was litigated and found in its favor and that Warnecke's complaint was no more than an attempt to relitigate the same issue. The district court concluded that under either Warnecke's breach of contract count, or implied warranty count, "[e]ssential to recovery . . . is a finding that Laclede performed services which were not in a 'workmanlike manner'." 455 F.Supp. at 446. Because the jury in the prior case had already found that issue in favor of Laclede, the district court entered summary judgment against Warnecke.

On appeal Warnecke argues that the application of issue preclusion principles to the refiled claims "rendered meaningless Judge Nangle's prior order dismissing the . . . counterclaim without prejudice," and further, that the verdict for Laclede in the first action did not collaterally estop Warnecke from litigating the issue of Laclede's breach of an implied warranty.

■ Warnecke's first argument is clearly without merit. We read Judge Nangle's

order in No. 78–1493 as Judge Meredith did in granting summary judgment in No. 78–1623. Judge Nangle was evidently aware of the potential collateral estoppel implications of the pending trial when he noted that Warnecke "conceivably" could refile the claim. Moreover, even had Judge Nangle attempted to do so, a trial court cannot, prior to the adjudication of factual issues, determine with certainty what the collateral estoppel or res judicata effect may be in subsequent litigation. The issue is not ripe until the prior adjudication occurs. *See Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Oldham v. Pritchett,* 599 F.2d 274, at 279 (8th Cir. 1979); *Gerrard v. Larsen,* 517 F.2d 1127, 1131–32 (8th Cir. 1975).

There is no dispute as to the substantive law of collateral estoppel. The issue of whether Laclede performed its services in a workmanlike manner was thoroughly litigated in the trial before Judge Nangle, and under the court's instructions the jury found that Laclede had in fact "performed services on the Total Energy Plant in a workmanlike manner." There was a final judgment on the merits, the parties are the same, and Warnecke had a full and fair opportunity to be heard on the adjudicated issue. *See Montana v. United States,* 440 U.S. at 153, 99 S.Ct. at 973–74. It follows that Count I of Warnecke's subsequent complaint alleging breach of the maintenance agreement is estopped by the jury's verdict in favor of Laclede's suit for money due on the agreement or for services rendered.

The real dispute between the parties is whether Warnecke is also estopped on Count II of the complaint alleging breach of an implied warranty. The critical averment in the complaint states:

13. Defendant impliedly warranted that the parts it would provide to the Total Energy Plant owned by plaintiff by virtue of Defendant's agreement with Plaintiff's agent . . . were free from defects, fit for the purposes for which they were intended, and in good, workable condition, and that the services

it would provide to Plaintiff would be workmanlike and professional and would meet Plaintiff's requirements in maintaining the Total Energy Plant in usable, operable condition . . . .

Judge Meredith concluded:

. . . Even though Count II contends Laclede impliedly warranted parts, the Court is of the opinion that a finding by a jury that Laclede performed maintenance of the power plant in a "workmanlike manner" includes, a fortiori, an implied finding that parts used in connection with the maintenance were not defective. To hold otherwise would allow the possibility of an inconsistent finding. (Citation omitted.)

455 F.Supp. at 446. We agree with Judge Meredith that in the circumstances of this case the finding that Laclede performed services in a workmanlike manner precludes recovery by Warnecke under an implied warranty theory.

To the extent Warnecke's implied warranty claim is explicitly founded on failure to provide "workmanlike" services, the jury verdict directly holding in favor of Laclede on that issue precludes any relitigation of the quality of the services rendered. In the final analysis, therefore, Warnecke is reduced to a claim that Laclede breached an implied warranty of fitness with respect to the parts furnished by Laclede in maintaining the engines. Warnecke maintains, and we agree, that under the Missouri pattern instructions Warnecke could prevail on a theory of breach of an implied warranty of fitness under the following circumstances:

First, Laclede sold machine parts to Warnecke, and

Second, Laclede knew or should have known by using ordinary care of the use for which Warnecke purchased the parts, and

Third, Warnceke reasonably relied upon Laclede's judgment as to the fitness of the machine parts for such use, and

Fourth, the machine parts were not fit for such use, and

Fifth, as a direct result Warnecke was damaged.

MAI 25.03. *See Matulunas v. Baker*, 569 S.W.2d 791, 793 (Mo.App.1978). J. White & R. Summers, Uniform Commercial Code 296–99 (1972). Under such an instruction it was incumbent on Warnecke to prove the existence of a defect or defects in the parts in question. *See United States Rubber Co. v. Bauer*, 319 F.2d 463, 466 (8th Cir. 1963). On the facts of this case, the jury finding that Laclede performed services in a workmanlike manner necessarily includes a finding that the machine parts were fit for their intended use.

Laclede brought its action to recover money due under the maintenance agreement and for the value of services rendered. Laclede alleged in its complaint that the maintenance services sued on included "labor, materials, parts, lubrication, oil and filters, and rebuilding or replacing all equipment as necessary . . . ." In this regard the complaint paraphrased the maintenance agreement. In its answer Warnecke admitted the scope of the maintenance services alleged by Laclede, but denied that Laclede had fully performed its obligation as alleged. Further, in answering Count II of the complaint, Warnecke alleged that the equipment "was not operating properly because of what later was discovered to be defective parts supplied by [Laclede]."

Whether Laclede performed the services it was seeking compensation for was thus clearly in issue, and under the contract between Laclede and Warnecke as developed in the pleadings, the fitness of the parts supplied by Laclede was inextricably involved with the performance of services. Moreover, we are convinced that not only were defective parts an issue in the pleadings, but the subject was litigated in the trial before Judge Nangle.[5] Many of Laclede's bills for services included parts used

in the overhaul of engine Nos. 2 and 3. Warnecke introduced evidence purporting to show that the difficulty with the engines following overhaul was in part due to defective parts. Laclede denied that it furnished defective parts and extensively argued the issue in its closing argument. Warnecke's closing argument focused on the failure of Laclede to adequately furnish the services contracted for in terms of both labor and parts. The maintenance agreement with its specific definition of "maintenance service" to include materials and parts was introduced into evidence and also was argued to the jury.

In sum, in the contractual relationship between Laclede and Warnecke as tried to the jury, the issue of whether Laclede performed the contracted for complete maintenance services necessarily implicated as a subissue the question of whether Laclede furnished fit parts. The issue was pleaded and litigated. The jury found that Laclede "performed services on the Total Energy Plant in a workmanlike manner." Within that finding is a finding that Laclede performed its contractual obligation, including the obligation to provide proper parts to maintain the engines. It follows that collaterally estopped to relitigate the fitness of the parts, Warnecke cannot prevail on a claimed breach of an implied warranty. We emphasize, however, that as always with a question of whether collateral estoppel principles are applicable, our decision here is controlled by the peculiar facts of these appeals.

For the foregoing reasons, the judgments appealed from are affirmed.

5. We realize that Judge Meredith did not have the transcript of the trial in No. 78–1493 before him at the time he granted summary judgment. Judge Meredith did have before him part of the district court file in No. 78–1493 and a substantially correct affidavit of Laclede's counsel to the effect that the defective parts issue had been tried in Judge Nangle's court. These materials were sufficient to base summary judgment on. Because the transcript in No. 78– 1493 was not filed with the district court in No. 78–1623, Laclede correctly notes that the transcript is not part of the record in the latter appeal. *See* Rule 10(a), F.R.App.P.; *Zell v. Jacoby-Bender, Inc.*, 542 F.2d 34, 38 (7th Cir. 1976). Both parties, however, have briefed the entire record in both causes of action and we perceive no prejudice here in reviewing the appeal in No. 78–1623 in light of the record in No. 78–1493.