**Stella STATHOS et al., Plaintiffs,**

v.

**Russell E. BOWDEN et al., Defendants.**

**Civ. A. No. 80–2450–G.**

United States District Court,
D. Massachusetts.

May 27, 1981.

---

G. Rosalyn Johnson, Lynn, Mass., for plaintiffs.

Timothy J. O'Keefe, Peabody, Mass., for defendants.

## MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

W. ARTHUR GARRITY, Jr., District Judge.

This complaint was filed by two women employees of the Peabody Municipal Light Plant (PMLP) who seek damages and in-

junctive relief under 42 U.S.C. §§ 1983 and 1985 against present and former members of the Peabody Municipal Lighting Commission. The plaintiffs allege that the Commissioners violated their fourteenth amendment right to be free from intentional sex discrimination in adjustments to their rates of pay. The defendants filed a motion to dismiss on January 9, 1981, and we heard oral argument on April 27, 1981. The defendants' motion is hereby denied for the reasons set forth below.

The defendants' motion originally was based on three grounds: that the complaint fails to state a cause of action under §§ 1983 and 1985, that the present claim is being litigated in state court, and that there is no federal jurisdiction since the complaint fails to allege that the defendants had acted under color of state law. The defendants waived the third ground for their motion at oral argument, and accordingly we address only the first two grounds.

### I. § 1983 Claims

Counts 1 and 3 of the complaint allege violations by the defendants of 42 U.S.C. § 1983. Count 1 alleges that plaintiff Stella Stathos has been employed by the PMLP from August 7, 1956 through 1979 as Principal Clerk and Secretary at the Plant. Count 3 alleges that plaintiff Gloria Bailey occupied the position of Clerk Typist. Counts 1 and 3 set forth facts which purport to show that the defendants, in their individual and official capacities, intentionally discriminated against the plaintiffs in setting their rates of pay on the basis of their sex. The gist of these counts is that the plaintiffs are the Office Manager and Administrative Assistant in charge of the clerical department at the PMLP. They complain that the male heads and assistant heads of the Engineering, Generation, and Distribution Departments are paid approximately $10,000 more than they per year for positions they allege entail "equal responsibilities." The Commissioners denied the plaintiffs pay raises commensurate with their responsibilities on three separate occasions.

The defendants claim that Counts 1 and 3 do not state a cause of action under § 1983 because these counts fail to allege that the positions held by the plaintiffs are substantially equal to the positions held by their male counterparts. Defendants base their argument on the proposition that these counts fail to show a deprivation of a federal right, privilege, or immunity in that the Equal Pay Act, 29 U.S.C. § 206 and Title VII, 42 U.S.C. § 2000e et seq. require an allegation that the jobs performed by women be "substantially equal" to higher paying jobs performed by men. Defendants' argument for dismissal based on a prima facie case under these statutes is wide of the mark since plaintiffs do not allege a violation of either of those statutes.

Plaintiffs base their § 1983 claims on the defendants' alleged violation of their fourteenth amendment rights. The standard against which the complaint must be measured is whether it alleges *intentional sex discrimination* by the defendant Commissioners. *Village of Arlington Heights v. Metropolitan Housing Corp.*, 1977, 429 U.S. 252, 264–68, 97 S.Ct. 555, 563, 50 L.Ed.2d 450; *see Personnel Administrator of Massachusetts v. Feeney*, 1979, 442 U.S. 256, 273–280, 99 S.Ct. 2282, 2292–2296, 60 L.Ed.2d 870. "Purposeful discrimination is 'the condition that offends the Constitution' . . . at least where a covert or overt gender-based classification is not in issue." *Marshall v. Kirkland*, 1979, 8 Cir., 602 F.2d 1282, 1283, 1299 *quoting Feeney, supra*. The purposeful discrimination required to maintain a cause of action under the fourteenth amendment and under § 1983 may be shown by all the facts and circumstances of the case. *Feeney* explained that "discriminatory purpose . . . implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Feeney, supra*, at 279, 99 S.Ct. at 2296. Though plaintiffs do allege that their positions entail "equal responsibilities" to those of their male counterparts; whether their jobs are "substantially equal" is at best one circumstance among many that may affect

a finding of purposeful discrimination. Since both Counts 1 and 3 allege purposeful discrimination on the part of the defendants, and plead supportive circumstances, they adequately state a cause of action.

■ A second basis for the defendants' motion to dismiss Counts 1 and 3 is that a § 1983 action is not maintainable against the Commissioners in their official capacity. The members of the Commission are municipal officers whose positions are permitted to be established by cities and towns by Mass. Gen. Laws c. 164, § 56A. *See Municipal Light Commission of City of Taunton v. City of Taunton*, 1948, 323 Mass. 79, 80 N.E.2d 31. As local government or municipal officials, it is now settled that the Commissioners may be sued in their official capacity under § 1983. "Since official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent ... our holding today that local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which, as here, a local government would be suable in its own name." *Monell v. New York City Department of Social Services*, 1978, 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 2035, n.55, 56 L.Ed.2d 611. *See also Owen v. City of Independence*, 1980, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673. Accordingly, defendants' motion to dismiss Counts 1 and 3 are denied.

## II. § 1985(3) Claims

Counts 2 and 4 of the complaint allege that the Commissioners conspired in their individual and official capacities and under color of state law, to deprive the plaintiffs of their fourteenth amendment right to be free from purposeful sex discrimination. These counts allege that at least on seven different occasions the defendants met to conspire to deny the plaintiffs pay raises on account of their sex, and that on three occasions the defendants publicly voted to deny the plaintiffs pay raises. Two of the conspiratorial meetings were attended by only two Commissioners, and three (of five) Commissioners were present on two other occasions.

The defendants alternatively assert that (1) if they were acting in their official capacities as Commissioners of the PMLP, there can be no § 1985 liability under the intracorporate conspiracy doctrine; and (2) if they were acting in their individual capacities, there can be no § 1985 liability because this section does not apply to purely private conspiracies involving gender-based discrimination.

### A. Intracorporate Conspiracy Doctrine

■ The plaintiffs must show a conspiracy between "two or more persons" in order to establish a violation of § 1985(3). The defendants contend that the action of the officers of a corporation (PMLP) in their official capacity does not meet this requirement and therefore there can be no conspiracy. *Dombrowski v. Dowling*, 7 Cir., 1972, 459 F.2d 190. The rationale is that a corporation is in itself a single legal entity and can act only by and through its officers, agents and employees. *Dombrowski* has received wide support, but many courts have limited its application in certain circumstances. For example, this doctrine has been held to be inapplicable when separate corporate officers have committed separate acts of discrimination against the plaintiff, *Rackin v. University of Pennsylvania*, E.D. Pa., 1974, 386 F.Supp. 992, and where the alleged discrimination arose from more than one of a corporation's several separate offices, *Dupree v. Hertz Corp.*, E.D.Pa., 1976, 419 F.Supp. 764.

The defendants have not represented the law concerning the intracorporate conspiracy doctrine accurately. In particular, they have misconstrued *Great American Savings & Loan Association v. Novotny*, 3 Cir., 1978, 584 F.2d 1235, *vacated on other grounds*, 1979, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957. Novotny brought suit under § 1985(3) alleging that he was fired by his employer because he charged the employer with discrimination against its female employees. The Court of Appeals panel rejected the

defendants' claim that the § 1985 suit should be dismissed based on *Dombrowski*. The Court of Appeals said, at 1257–1259:

It is true that a conspiracy requires a plurality of legal personalities as one of its elements. For example, at common law a husband and wife could not conspire, since they constituted a single personality in the eyes of the law. But it is well settled that an employer can conspire with his employee, and the Supreme Court has held that a labor union can conspire with its business agent. The assertion of the defendants must therefore be that incorporation confers on corporate employees an immunity from liability under § 1985(3).

We see nothing in the policies undergirding § 1985(3) that would support such an argument. If, as seems clear under § 1985(3), the agreement of three partners to use their business to harass any blacks who register to vote constitutes an actionable conspiracy, we can perceive no function to be served by immunizing such action once a business is incorporated.

\* \* \* \* \* \*

Similarly, the sole Supreme Court decision to shed direct light on the issue before us undercuts the defendants' position. In *Pennsylvania R.R. System & Allied Lines Fed. No. 90 v. Pennsylvania R.R. Co.* [267 U.S. 203, 45 S.Ct. 307, 69 L.Ed. 574], a labor union brought suit against an employer and its officers, claiming that under the predecessor to 18 U.S.C. § 241, the actions of the corporation and officers in resisting the recommendations of an arbitration board under the Railway Labor Act constituted a conspiracy to "injure, oppress, threaten, or intimidate any person in the free exercise or enjoyment of" a federal right or privilege. The Supreme Court's opinion expressed no doubts regarding the viability of a conspiracy composed of corporate officers. Rather it stated that "the whole issue ... is whether the provisions of Title III, in pointing out what Congress wished the parties to the dispute to do, was intended by Congress to be a

positive, obligatory law...." Thus, since neither considerations of policy nor force of precedent require adherence to defendants' stance, we do not follow the line of cases adopting the rule that concerted action among corporate officers and directors cannot constitute a conspiracy under § 1985(3).

The defendants, in their reliance on the Supreme Court's decision in *Novotny*, have overlooked the fact that the Supreme Court expressly reserved ruling on the Court of Appeals decision that a § 1985(3) conspiracy suit would be maintainable against officers of the same corporation. *Novotny*, 442 U.S. at 372 n. 11, 99 S.Ct. at 2349 n.11. *Novotny* held that only constitutional deprivations would support a § 1985(3) conspiracy. Since Novotny did not allege a deprivation of his constitutional rights, but rather a right conferred by Title VII, the conspiracy was not cognizable under § 1985. Stathos and Bailey, the plaintiffs in the instant case, allege that the defendants conspired to deprive them of their fourteenth amendment rights, and therefore allege a conspiracy cognizable under § 1985(3) under the Supreme Court's holding in *Novotny*.

The Court of Appeals in *Novotny* did not preclude the application of *Dombrowski* to conspiracies alleged against corporate officers. Rather, it demonstrated that the doctrine should not be applied blindly in all circumstances. In *An-Ti Chai v. Michigan Technological University*, W.D.Mich., 1980, 493 F.Supp. 1137, 1164–1167, the court explained the limitations of the intracorporate conspiracy doctrine:

While the *Dombrowski* rule would appear to make sense where there is a single corporate act emanating from a group decision (e. g., board of directors voting to fire employee), *the rule pales where numerous and varied acts of discrimination by several persons are committed against the plaintiff.* It makes no sense to immunize illegal discriminatory activity merely because the activity arose in a corporate setting. Where two or more corporate officers by agreement commit different discriminatory acts against

plaintiff, I believe a § 1985(3) violation has occurred.

We believe that the circumstances alleged in this complaint support a claim cognizable under § 1985(3). First, municipalities are now considered "persons" for purposes of § 1983, *see Monell, supra,* and are also considered "persons" for purposes of § 1985. *Owens v. Haas,* 2 Cir., 1979, 601 F.2d 1242. Second, plaintiffs allege that the defendants unofficially met and conspired to deprive plaintiffs of their fourteenth amendment rights on several occasions. At least four unofficial meetings were held with fewer than all the defendant Commissioners present. Third, the defendants refused the plaintiffs pay raises and also refused to change plaintiffs' positions or titles. Fourth, the defendants' actions were taken over the course of several years. These circumstances dispel what might, at first blush, appear to be "a single corporate act emanating from a group decision." *An-Ti Chai, supra,* at 1166. Accordingly, defendants' motion to dismiss on this ground is denied.

### B. *§ 1985(3) Gender Discrimination Conspiracies*

The second point made by the defendants is that even if they are sued in their individual capacities, § 1985(3) does not encompass a claim against private persons conspiring to deprive a person of a fourteenth amendment right to be free from gender discrimination. Leaving aside the fact that as municipal officers, if the defendants acted in their individual capacities they would still be cloaked with the authority of the state, the defendants' position is incorrect.

The First Circuit, in *Harrison v. Brooks,* 1 Cir., 1975, 519 F.2d 1358, adopted and explained the elements of a cause of action under § 1985(3) first set forth by the Supreme Court in *Griffin v. Breckenridge,* 1971, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338. *Harrison* states that "the complaint must allege facts showing that the defendants conspired against the plaintiffs because of their membership in a class and that the criteria defining the class were invidious." 519 F.2d at 1360. There is no doubt that purposeful sex discrimination is invidious discrimination. *Personnel Administrator of Massachusetts v. Feeney, supra,* 442 U.S. at 273, 99 S.Ct. at 2293, or that § 1985 applies to private conspiracies to deprive individuals of substantive rights conferred by the fourteenth amendment. *Novotny, supra,* at 372, 99 S.Ct. at 2349. Accordingly, Counts 2 and 4 state valid causes of action and the defendants' motion to dismiss on this basis is hereby denied.

### III. *Litigation in State Court*

Defendants also urge that this complaint be dismissed because the same action is pending in state court. On the basis of defendants' own statements and allegations in their brief, however, it is plain that this is not so. The state court litigation involves rights under Mass. Gen. Laws c. 151B, not rights conferred on the plaintiffs under the fourteenth amendment and 42 U.S.C. § 1983 and 1985. The defendants' motion on this basis is accordingly denied as well.

We find that Counts 1, 2, 3 and 4 of plaintiffs' complaint state causes of action against the defendants, whose motion to dismiss is hereby denied.