Danny Clark CROSS, Appellant,

v.

GENERAL MOTORS CORPORATION, Appellee.

No. 83–1710.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 7, 1983.

Decided Nov. 18, 1983.

Danny C. Cross, pro se.

James E. McDaniel, John W. Sunnen, Robert C. Tucker, Lashly, Caruthers, Baer & Hamel, P.C., St. Louis, Mo., for appellee, General Motors Corp.; Francis S. Jaworski, General Motors Corp., Detroit, Mich., of counsel.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

Danny Clark Cross, an attorney, appeals pro se from the district court's[1] dismissal without prejudice of his employment discrimination action, 563 F.Supp. 368. The court dismissed Cross's claim pursuant to Fed.R.Civ.P. 37(b) for willful failure to comply with a discovery order. Subsequently, the district court also revoked Cross's in forma pauperis status, and assessed certain costs against him. On appeal, Cross contends that the district court (1) abused its discretion in dismissing his cause of action, (2) improperly dismissed one count of his complaint alleging conspiracy under 42 U.S.C. § 1985(3), (3) improperly revoked his in forma pauperis status, and (4) erred in assessing certain costs against him. We affirm.

BACKGROUND

On April 4, 1980, Cross filed a civil rights action against his former employer, General Motors Corporation (GMC), asserting claims of employment discrimination under 42 U.S.C. §§ 1981 and 1985(3). Cross alleged that GMC and its agents had conspired to harass him and deprive him of employment rights because of his race. He further alleged racially motivated disparate treatment by GMC. Cross filed a motion to proceed in forma pauperis, which the district court granted based on a financial affidavit filed by Cross in October of 1980.

The course of events after Cross filed his complaint was far from smooth. After several amendments and proposed amendments to pleadings, numerous motions,[2] four pretrial conferences between the court and the parties on discovery and pleading matters, and ten trial dates, the case finally came to trial on January 5, 1982.[3] Following jury selection, GMC informed the court that in December, 1981, Cross had been served with a subpoena duces tecum requiring him to produce at trial all his income tax returns for the years 1968 to 1981. Cross did not produce the tax returns on January 5. He stated that he did not believe the subpoena was valid because it requested that the documents be produced on December 7, 1981, the date of a prior

---

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

2. GMC filed a pretrial motion requesting, *inter alia,* that Cross's § 1985(3) claim be dismissed. On December 18, 1980, the district court dismissed Cross's conspiracy count for failure to state a claim.

3. After leaving General Motors Corporation in 1976, Cross obtained a law degree. He represented himself at trial, appearing for the first time in federal court.

trial setting of the case, yet the subpoena was not served until December 22, 1981. Judge Hungate stated that he did not want the trial delayed by technical objections, and the following agreement was reached:

THE COURT: Now, you know he wants your tax returns, Mr. Cross. Do you have them?

MR. CROSS: Judge, I informed counsel I had tax returns from the years '78 through '80, that he could have copies of that. And I would execute a waiver and he could go to the Internal Revenue Service and get all the files he desires.

THE COURT: Mr. Sunnen, can we start with that?

MR. SUNNEN: That's fine.

THE COURT: Can you furnish that to him?

MR. SUNNEN: This afternoon would be fine, but I don't need them this instant, but if he could give them.

THE COURT: Prior to tomorrow morning.

MR. CROSS: I only have them for '78 through '80 and I'll execute the waiver.

THE COURT: Would that be adequate?

MR. SUNNEN: If he does not have the documents, he cannot produce them. That is adequate for our purposes.

Cross produced nothing until the morning of January 6, 1982, at which time he tendered photocopies of the first page only of a Form 1040 for 1978, and of Forms 1040A for 1979 and 1980. No W–2 forms, schedules, or other information was attached. In addition, Cross offered a photocopy of a signed Internal Revenue Service Form 4506, a Request for Copy of Tax Form.

GMC contended that the forms submitted by Cross were unsatisfactory and incomplete, and moved the court to find Cross in contempt. GMC also pointed out that the limited information on the papers offered by Cross indicated that Cross might not be

entitled to proceed in forma pauperis. Judge Hungate did not grant GMC's motion for contempt, but did express disbelief that Cross, an attorney, could possibly think the three sheets of paper submitted that morning represented an adequate, good faith response to GMC's request. Judge Hungate stated that under the circumstances, he should probably dismiss the case, but he wanted to give Cross every opportunity to comply fully with the court's order. He then specifically directed Cross to produce full and complete copies of all available tax returns for 1978, 1979, and 1980, including all schedules and attachments, and to deliver them to GMC along with original, signed copies of Form 4506 authorizing the IRS to release copies of Cross's tax returns for the years 1976 through 1980. Judge Hungate warned Cross that sanctions would be imposed if Cross failed to furnish the documents to GMC before court convened at 9:00 the following morning.

That afternoon, Cross delivered to GMC's attorney photocopies of his tax returns for the years in question, complete with schedules and W–2 forms. He also tendered several copies of IRS Form 4506. The IRS release forms were blank except for Cross's signature, the date, and a mark indicating that Cross wanted copies of all pages and attachments to be released.

When court reconvened on January 7, GMC moved to dismiss the action, to revoke Cross's in forma pauperis status, and to require Cross to secure costs. GMC contended that the forms Cross delivered to defense counsel on the afternoon of January 6 did not seem to be the same as the documents submitted earlier that day in court. Cross explained that the forms were the same, except that he had filled in social security numbers on the copy of the 1979 form.[4] GMC also claimed that one photocopy of a W–2 form submitted by Cross was illegible, and that the Form 4506 did not

<hr />

4. On reviewing the record, it appears that the three sheets of paper submitted on the morning of January 6, the more complete forms submitted that afternoon, and the forms later obtained from IRS files were, in fact, copies of the same documents. The original forms filed with the IRS did, however, contain some identifying information (social security number, the taxpayer's name and address on a printed sticker furnished by the IRS) not present on the copies retained by Cross.

contain sufficient information to permit GMC to obtain Cross's tax returns from the IRS. Cross acknowledged that he had the information necessary to complete the IRS release forms, but pointed out that he had already furnished most of that information to GMC in the course of discovery. Thus, he felt defense counsel could complete the forms to request whatever tax returns GMC wanted. Cross indicated that he had intended to comply with the court's order, and believed that he had done so.

After considering the arguments of both parties, the district court concluded that Cross had displayed callous disregard for his responsibilities as an attorney, and that his actions showed sufficient indicia of bad faith to warrant imposition of serious sanctions.[5] The court therefore dismissed Cross's cause of action without prejudice, but retained jurisdiction to determine appropriate allocation of costs, and to consider whether Cross's in forma pauperis status should be revoked. Judge Hungate noted that the tax returns produced by Cross raised serious questions about the truthfulness of the sworn financial statement submitted in support of Cross's in forma pauperis request. Cross was therefore ordered to obtain copies of his income tax returns for 1978, 1979, and 1980 from the IRS, and to submit them to the district court before June 30, 1982.

Cross duly submitted the requested forms to the district court and, on July 16, 1982, a show cause hearing was held to determine whether Cross's in forma pauperis status should be withdrawn. On December 7, 1982, the district court entered an order partially granting GMC's motion for fees and costs, and assessing costs against Cross in the amount of $290.82. On April 26, 1983, the district court entered a final order revoking Cross's in forma pauperis status. This appeal followed.

ISSUES

A. Abuse of Discretion in Dismissing the Cause of Action

Cross first alleges that the district court erred in dismissing his cause of action in the circumstances of the present case. Fed.R.Civ.P. 37(b) gives the trial court discretion to impose a variety of sanctions, including dismissal, for failure to obey discovery orders.[6] Imposition of such sanctions should not be reversed unless there has been an abuse of discretion. *See, e.g., National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); *English v. 21st Phoenix Corp.,* 590 F.2d 723, 728 (8th Cir.), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979); *Fox v. Studebaker-Worthington, Inc.,* 516 F.2d 989, 993 (8th Cir.1975). The more severe sanctions of dismissal and default are, however, appropriately imposed only where failure to comply with a discovery order is due to willfulness, fault, or bad faith. *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958); *Laclede Gas Co. v. G.W. Warnecke Corp.,* 604 F.2d 561, 565–566 (8th Cir.1979); *Kropp v. Ziebarth,* 557 F.2d 142, 146 (8th Cir.1977).

In the case at hand, it appears that the district court acted within its discretion for several reasons. First, the record indicates that Cross's failure to comply promptly and fully with the discovery request was not because of inability to do so. He had both the tax returns and the information necessary to complete the release forms in his possession. The district court clearly believed Cross was acting in bad faith. *See Laclede Gas Co. v. G.W. Warnecke Corp., supra,* 604 F.2d at 566. Second, the district court's Memorandum of January 7, 1982,

---

**5.** Judge Hungate noted that in reaching his decision, he had considered the cumulative effect of Cross's behavior, which included appearing once in court in shirt sleeves and arriving late in court on both January 6 and January 7.

**6.** Rule 37(b) provides that the court may treat the failure to comply with a discovery order as contempt of court, require payment of reasonable attorney's fees, stay proceedings until the discovery order has been obeyed, require admissions, allow designated evidence, strike pleadings, or enter a dismissal or default judgment.

suggests that Judge Hungate properly considered the full record and looked at the cumulative effect of Cross's conduct in deciding that his behavior warranted dismissal of the action. *See Link v. Wabash Railroad,* 370 U.S. 626, 634–635, 82 S.Ct. 1386, 1390–1391, 8 L.Ed.2d 734 (1962). Finally, the severity of the sanction is mitigated by the fact that the dismissal was without prejudice. Cross can refile his complaint and have his day in court. *See Laclede Gas Co. v. G.W. Warnecke Corp., supra,* 604 F.2d at 566. Thus, we cannot say the district court abused its discretion in this instance.

We note, however, that one reason for a trial court to employ sanctions is "to prevent undue delays in the disposition of pending cases * * *." *Link v. Wabash Railroad, supra,* 370 U.S. at 629, 82 S.Ct. at 1388. The instant case had already consumed a considerable amount of the court's time in pretrial matters, and, after many delays, had finally come to trial on January 5, 1982. The jury was selected, opening statements had been made, and witnesses were present. It is questionable whether the goal of judicial economy was served by dismissing the action without prejudice on the third day of trial, especially since it appears that Cross had substantially complied with the discovery request. Therefore, while we find no clear abuse of discretion, we emphasize that courts should be extremely reluctant to select the sanction of dismissal in such circumstances.

### B. Dismissal of Cross's Conspiracy Claim Under 42 U.S.C. § 1985(3)

■ Cross next challenges the district court's dismissal on December 18, 1980, of his 42 U.S.C. § 1985(3) claim alleging a conspiracy by GMC and its agents to discriminate against him because of his race. This court has held that a corporation and its agents are a single person in the eyes of the law, and a corporation cannot conspire with itself. *See Baker v. Stuart Broadcasting Co.,* 505 F.2d 181, 183 (8th Cir.1974), *quoting Dombrowski v. Dowling,* 459 F.2d

190, 196 (7th Cir.1972). As the Seventh Circuit observed in *Dombrowski,*

> if the challenged conduct is essentially a single act of discrimination by a single business entity, the fact that two or more agents participated in the decision or in the act itself will normally not constitute the conspiracy contemplated by [§ 1985(3)].

459 F.2d at 196 (citation omitted). *Accord Girard v. 94th Street & Fifth Avenue Corp.,* 530 F.2d 66, 70 (2d Cir.), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976).

■ Cross argues that his complaint alleges not "a single act of discrimination," but continuing violations, and thus should not fall within the *Dombrowski* line of cases. *See Rackin v. University of Pennsylvania,* 386 F.Supp. 992, 1005–1006 (E.D.Pa. 1974) (claim of continued and varied instances of discrimination and harassment involving more than a single decision by one business entity supported a conspiracy allegation). Cross correctly points out that the case law does not completely foreclose the possibility of applying § 1985(3) to a single corporation. *See, e.g., Great American Savings and Loan Ass'n v. Novotny,* 442 U.S. 366, 372 n. 11, 99 S.Ct. 2345, 2349 n. 11, 60 L.Ed.2d 957 (1979); *Stathos v. Bowden,* 514 F.Supp. 1288, 1291–1293 (D.Mass.1981); *Dupree v. Hertz Corp.,* 419 F.Supp. 764, 766 (E.D.Pa.1976). However, courts that have held that an actionable section 1985(3) claim is presented have generally done so only where individual defendants are named as well as the corporation, and those individuals acted outside the scope of their employment or for personal reasons. *See, e.g., Coley v. M & M Mars, Inc.,* 461 F.Supp. 1073, 1076–1077 (M.D.Ga.1978); *Rackin v. University of Pennsylvania, supra,* 386 F.Supp. at 1005–1006. Under the facts of the present case, where only GMC is named as a defendant, and the agents' alleged acts arguably were within the scope of employment,[7] the district court did not err in find-

---

**7.** Cross alleged, *inter alia,* that he was given inappropriate job assignments, that false entries were made in his employment records, and that certain requests (to see the plant doc-

ing that Cross had failed to state a claim upon which relief could be granted.

### C. Revocation of Cross's In Forma Pauperis Status

The district court revoked Cross's in forma pauperis status after comparing his income tax return for 1980 with the financial affidavit he submitted on October 20, 1980. On the affidavit, Cross stated that his income for the preceding twelve months had been $1,684. His tax return for 1980 indicated that he had earned $3,175. Cross contends that he earned the $1,491 difference between October 20, when the affidavit was filed, and the end of the calendar year. Cross reported his wife's income on the affidavit as $700 per month ($8,400 per year). The joint tax return showed that she earned over $13,000 in 1980. Cross explains that he reported his wife's net earnings per month after deducting the amount withheld for taxes because that was the amount of income actually available to him. The rest of the discrepancy Cross attributes to his wife's overtime earnings. He claims that he was unaware of these additional earnings at the time he filed the affidavit because he and his wife were living apart.

The district court found Cross's explanation for the disparity in income between the two documents unsatisfactory. The court concluded that Cross had materially understated the income and resources available to him in 1980, and withdrew his in forma pauperis status *nunc pro tunc*.

Under 28 U.S.C. § 1915, the decision whether to grant or deny in forma pauperis status is within the sound discretion of the trial court. *See, e.g., In Re Smith,* 600 F.2d 714, 716 (8th Cir.1979); *Forester v. California Adult Authority,* 510 F.2d 58, 60 (8th Cir.1975). In the present case, the district court's conclusion that Cross had made false statements on his financial affidavit was not clearly errone-

ous, and the court did not abuse its discretion in revoking Cross's in forma pauperis status.

### D. Assessment of Costs Against Cross

Cross's final contention is that the district court erred in awarding certain costs in favor of GMC. In its order dated December 7, 1982, the district court assessed a total of $290.82 in costs against Cross pursuant to Fed.R.Civ.P. 54(d).[8] Under Rule 54(d), allocation of costs is within the sound discretion of the trial court. *See Missouri Pacific Railroad v. Star City Gravel Co.,* 592 F.2d 455, 459–460 (8th Cir. 1979); *Boyd v. Ozark Airlines, Inc.,* 568 F.2d 50, 55 (8th Cir.1977). The district court's order indicates that the trial judge considered Cross's limited financial resources, but concluded that a partial award of costs in favor of GMC was nevertheless appropriate. In so doing, the district court did not abuse its discretion.

Accordingly, we affirm the judgment of the district court.

---

tor, to receive overtime pay) were improperly denied. He also claims that he was "watched" and "physically battered" by several foremen.

**8.** The district court granted GMC's motion for $167.82 for costs to subpoena witnesses, and

$123.00 for the cost of a special process server. The court denied GMC's request for $28,938 in attorney's fees, and $1,838.60 for copies of Cross's deposition.