**Rosa Elizabeth HUNT, Plaintiff,**

v.

**Robert WEATHERBEE, et al., Defendants.**

**Civ. A. No. 84–3001–Y.**

United States District Court, D. Massachusetts.

Jan. 23, 1986.

Edward Greer, Cambridge, Mass., for plaintiff.

Robert E. Fast, Hale & Dorr, Boston, Mass., for defendants Turner Const. and Mark Dirksmeir.

Michael A. Feinberg, Feinberg & Feld, Boston, Mass., for defendants Weatherbee, Bryant and Shaw.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This action arises from an alleged pattern and practice of sex discrimination and sexual harassment committed against the plaintiff Rosa Elizabeth Hunt ("Hunt") while she was employed as an apprentice with the United Brotherhood of Carpenters and Joiners of America, Local 40 ("Local 40"). Hunt has brought federal claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (Counts I–IV); the Civil Rights Acts, 42 U.S.C. §§ 1985(2), 1985(3); and 1986 (Counts V–IX); and the Landrum-Griffin Act, 29 U.S.C. § 101 et seq. (Count XIV). In addition, she has brought pendant state claims alleging civil rights violations and civil conspiracy (Counts X–XIII). Three of the defendants have now moved to dismiss Counts I–VII for failure to state a claim upon which relief can be granted, and to dismiss Counts X–XIII for lack of subject matter jurisdiction. For the reasons that follow, the motion is denied.

## I. *Background*

Hunt has alleged by verified complaint the following facts, which are accepted as true for purposes of this motion: At all times relevant to this lawsuit, Hunt has been a member in good standing of Local 40. She is currently a certified journeyman carpenter, having successfully completed a four-year apprenticeship. Pursuant to an apprentice agreement executed on or about June 2, 1980, Local 40 has been responsible for obtaining employment for Hunt with certain construction companies, including the Perini Corporation and the Ceco Corporation.

From September, 1981 until June, 1983, Hunt was employed by the Perini Corporation at a construction site at Harvard Square in Cambridge, Massachusetts. She has alleged that throughout this period of employment at the Harvard Square site, she was subjected to numerous acts of sex discrimination and sexual harassment. In April or May of 1982, she attended a meeting with the defendant Robert Weatherbee, the Business Agent of Local 40, and informed him of these discriminatory practices. Weatherbee condoned and ratified such practices and refused to take any action to stop them, despite his power and authority to do so as an officer of Local 40.

In addition to her allegations of discriminatory and harassing practices which occurred on the Harvard Square worksite generally, Hunt has alleged specific facts relating to an incident in November, 1981. On November 5, 1981, while in the course of her employment at Harvard Square, Hunt was the victim of an assault and battery by a fellow servant, William Freeman. After filing a criminal complaint against Freeman on November 6, 1981, Hunt was called to a meeting with various officials, including Weatherbee and the defendant Robert Bryant, the Financial Secretary and Assistant Business Agent of Local 40. All of the officials present at that meeting accused Hunt of being responsible for the assault, expressed sexually discriminatory animus toward her, and demanded that she withdraw her criminal complaint. As a result of the alleged coercion and intimidation by Weatherbee and Bryant, Hunt did in fact withdraw her criminal complaint.

In March, 1984, Hunt worked at a construction site at Osborne Street in Cambridge, Massachusetts, at the direction of Local 40. At that time, Hunt was employed by the Ceco Corporation, which was a subcontractor to defendant Turner Construction Corporation ("Turner Construction"). According to Hunt, the defendant Mark Dirksmeir was the general superintendant of Turner Construction and had overall responsibility for the Osborn Street project. Throughout the period of her employment at the Osborne Street site, Hunt again was subjected to various acts of sexual harassment and sex discrimination.

On March 26 and 27, 1984, Hunt was approached by the defendant Joe Shaw, the shop steward of Local 40, who attempted to coerce her into purchasing raffle tickets for the so-called "Local 40 Political Action Fund." Shaw allegedly made hostile and intimidating statements to Hunt, based upon sexually discriminatory animus, including threats of personal injury if she did not purchase the tickets. Hunt left the worksite in fear of physical injury and loss of her employment, and contacted defendant Weatherbee for protection against such threats, but Weatherbee refused to act. Hunt returned to the site on March 27, 1984 and met with Shaw and Dirksmeir. Shaw repeated his threats of physical harm in the presence of Dirksmeir, but Dirksmeir refused to take any action. Hunt then left the site in fear for her safety and never returned to work as a Local 40 carpenter.

On September 21, 1984, Hunt filed this action against three officials of Local 40—Weatherbee, Bryant, and Shaw—and against Turner Construction and its alleged general superintendent, Dirksmeir.[1]

---

1. Turner Construction and Dirksmeir have denied that Dirksmeir was the general superintendent at the Osborne Street site.

## II. *The RICO Claims*

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, provides a private civil action to recover treble damages for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Section 1962 outlaws the use of income derived from a "pattern of racketeering activity" to acquire an interest in, establish, or operate an enterprise engaged in or affecting interstate commerce; the acquisition or maintenance of any interest in an enterprise "through" a pattern of racketeering activity; conducting or participating in the conduct of an enterprise through a pattern of racketeering activity; and conspiring to violate any of these provisions. 18 U.S.C. § 1962; *Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 3278, 87 L.Ed.2d 346 (1985).

Hunt has brought civil RICO claims against Weatherbee (Counts I and II) and Bryant (Counts III and IV), alleging as predicate acts of racketeering activity (1) the actions of Weatherbee and Bryant in coercing Hunt to withdraw her criminal complaint against Freeman, and (2) the actions of Shaw, described as the "agent" of Weatherbee and Bryant, in attempting to coerce Hunt to purchase raffle tickets for the Local 40 Political Action Fund. According to Hunt, these two predicate acts constitute a "pattern of racketeering activity" as defined by 18 U.S.C. 1961(5). Weatherbee and Bryant have moved to dismiss the RICO claims on several grounds.

### A. *Type of Injury Alleged*

Weatherbee and Bryant argue that Hunt has alleged "the wrong type of injury" to sustain a civil RICO claim. First, they contend that Hunt's claim is simply one for emotional distress, and that such a claim is not actionable under RICO. Second, they argue that Hunt has not alleged any organized crime involvement by the defendants.

It is inacurate to characterize Hunt's action as a claim for emotional distress. The thrust of her complaint is that the defendants engaged in willful acts of discrimination and harassment which "permanently disable[d] [her] from her trade as a carpenter," and she seeks damages for loss of wages. Although Hunt also seeks substantial damages for pain and suffering, she has not included a cause of action for infliction of emotional distress.

Weatherbee and Bryant assert that an employee's action for lost wages is not cognizable under 18 U.S.C. § 1964(c), which provides a civil action to any person injured in his "business or property" by reason of a violation of § 1962. Weatherbee and Bryant rely on *Van Schaick v. Church of Scientology of California,* 535 F.Supp. 1125 (D.Mass.1982), in which the court dismissed a civil RICO claim on the ground that the plaintiff had alleged "no injury to business or property but rather that the plaintiff had to flee about the United States and suffered emotional distress." *Id.* at 1137.[2] *Van Schaick* did not involve an employment relationship and thus is easily distinguished from the case at bar.

■ In interpreting the scope of the "business or property" language of § 1964(c), it is appropriate to consider those decisions which have interpreted identical language from Section 4 of the Clayton

---

**2.** The court in *Van Schaick* held that while § 1964(c) does not require a "competitive" injury, it does require "commercial" harm in the form of "business loss from racketeering injuries." 535 F.Supp. at 1136–37 & n. 11. The court narrowly construed the "business or property" language of § 1964(c), stating that courts "should be sensitive to the statute's commercial orientation and to Congress' obvious intention to restrict the plaintiff class." *Id.* at 1137. The force of this language has been substantially weakened by the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), which stressed that the civil RICO provisions are to be liberally construed and that courts should refrain from imposing limitations that do not clearly follow from the statutory language. *Id.,* 105 S.Ct. at 3284–87. The court in *Sedima,* however, was not confronted with the issue of interpreting the scope of the "business or property" language of § 1964(c).

Act, 15 U.S.C. § 15,[3] since the Clayton Act served as the model for § 1964(c). *Sedima, S.P.R.L. v. Imrex Co.,* — U.S. —, 105 S.Ct. 3275, 3279–81, 87 L.Ed.2d 346 (1985). In the antitrust context, federal courts have frequently concluded that "the loss of employment constitutes an injury to one's business or property." *McNulty v. Borden, Inc.,* 474 F.Supp. 1111, 1116 (E.D. Pa.1979) (collecting cases); *see, e.g., Quinonez v. National Ass'n of Securities Dealers, Inc.,* 540 F.2d 824, 829–30 (5th Cir. 1976) (loss of an opportunity to perform work is an "injury to business"). There is no compelling reason to apply a different rule in this case, where Hunt has alleged that the defendants' actions forced her out of her job as a carpenter and disabled her from pursuing such work in the future. Therefore, this Court rules that Hunt has properly alleged an injury to "business or property" within the meaning of § 1964(c).

With respect to the assertion that Hunt did not allege any organized crime involvement by the defendants, the Supreme Court made clear in *Sedima* that such an allegation is not necessary to state a cognizable claim under § 1964(c). Because Congress wanted to reach both "legitimate" and "illegitimate" enterprises, there is no requirement that a RICO plaintiff must allege a "racketeering injury." 105 S.Ct. at 3284–87.

## B. *The Predicate Acts*

Hunt has alleged that Weatherbee and Bryant committed two predicate acts of racketeering activity.[4] First, she alleges that the actions of Weatherbee and Bryant in coercing her to withdraw her criminal complaint against Freeman constitute extortion chargeable under Mass.Gen.Laws ch. 265, § 25, and obstruction of a criminal investigation indictable under 18 U.S.C. § 1510(a). Second, she alleges that the actions of Shaw (acting as the agent of Weatherbee and Bryant) relating to the sale of raffle tickets constituted an act of extortion chargeable under Mass.Gen.Laws ch. 265, § 25, and indictable under the Hobbs Act, 18 U.S.C. § 1951.[5]

Weatherbee and Bryant assert that Hunt's allegations are insufficient to show a pattern of racketeering activity. They make the following arguments in support of their motion to dismiss: (1) that the incident involving Hunt's withdrawal of her criminal complaint does not qualify as a predicate offense; (2) that the incident involving the sale of raffle tickets does not qualify as a predicate offense; and (3) that the two alleged predicate acts do not constitute a "pattern" within the meaning of § 1961(5).[6]

3. Section 4 of the Clayton Act provides in relevant part: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15.

4. To establish liability under RICO, a plaintiff must prove that the defendants engaged in a "pattern of racketeering activity," 18 U.S.C. §§ 1962, 1964, which is defined as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

5. 18 U.S.C. § 1961(1) provides in relevant part that "racketeering activity" means "(A) any act or threat involving murder, kidnaping, gam-

bling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of [various provisions of title 18, United States Code, including] section 1510(a) [and] section 1951."

6. Weatherbee and Bryant also argue that the RICO claims should be dismissed because Hunt did not allege that the defendants were convicted of any of the alleged predicate offenses. The statute defines a racketeering activity as any act "chargeable" under several generically described state criminal laws or any act "indictable" under certain specific federal criminal provisions. 18 U.S.C. § 1961(1). In *Sedima,* the Supreme Court made clear that a plaintiff suing under § 1964(c) need not allege that the defendants were convicted of the alleged predicate offenses. 105 S.Ct. at 3281–84.

### 1. *Coercion to Withdraw Criminal Complaint*

With respect to Counts II and IV, brought pursuant to 18 U.S.C. § 1962(e), Weatherbee and Bryant argue that there is no "nexus" between the predicate offense concerning the withdrawn criminal complaint and the enterprise (Local 40). In effect, they are arguing that their alleged threats and coercion against Hunt were unrelated to their positions as officers of Local 40 and that their actions conferred no benefit upon the union.

■ The RICO statute does not require that the predicate acts be in furtherance of the enterprise in order to show that the affairs of the enterprise have been conducted "through" a pattern of racketeering activity within the meaning of § 1962(c). Instead, there is a sufficient nexus between the predicate offenses and the enterprise if the defendant (1) is enabled to commit the predicate offense solely by virtue of his position in the enterprise or his involvement in or control over its affairs, or (2) the predicate offenses are related to the activities of that enterprise. *United States v. LeRoy*, 687 F.2d 610, 617 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983).

Hunt has alleged that Weatherbee and Bryant were officers of Local 40 and responsible for the protection of her rights under an apprenticeship agreement. She has further alleged that Weatherbee and Bryant threatened injury to her employment if she did not agree to withdraw her criminal complaint against Freeman. Weatherbee and Bryant respond by asserting that "[a]ny person ... could have threatened and coerced [Hunt] in the manner alleged" and that "[i]t was not necessary to be in a particular position within Local 40 to commit the predicate offense." This response is without merit—surely it was only due to their positions of authority in the union that Weatherbee and Bryant

had the opportunity and power to make a credible threat against Hunt. For purposes of the pending motion, Hunt undoubtedly has satisfied the requirements of alleging a sufficient nexus between the predicate acts and the affairs of Local 40.

Weatherbee and Bryant also assert that the circumstances surrounding the withdrawn criminal complaint do not support Counts I and III, brought pursuant to 18 U.S.C. § 1962(b).[7] Those counts allege that Weatherbee and Bryant maintained control over an interest in Local 40 through racketeering activity. Weatherbee and Bryant again respond that the alleged threats and coercion were unrelated to the activities of Local 40 and did nothing to aid them in their union positions. This argument also fails. It is certainly a reasonable inference from the alleged facts that Weatherbee and Bryant acted against Hunt in order to quell any dissension or conflict within the work setting, even at the expense of ignoring a serious assault against one of Local 40's own members. Worse, this particular action against Hunt may have simply represented one instance in a longstanding effort by union officials to maintain the status quo by harassing and discriminating against female union members, as Hunt has alleged. In any event, this clearly is a factual issue that cannot be decided at this stage in the proceedings.

### 2. *Sale of Raffle Tickets*

Weatherbee and Bryant also contend that the incident involving the sale of raffle tickets does not qualify as a predicate offense. They argue that the alleged acts of extortion against Hunt were committed by Shaw, and that even if Shaw was their "agent," they could not be criminally liable for the acts of an agent acting outside the scope of his authority. In response, Hunt concedes that Weatherbee and Bryant would not be liable for Shaw's extortion if his acts were outside the scope of his au-

---

**7.** 18 U.S.C. § 1962(b) provides: "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

thority; however, she argues that she is entitled to demonstrate that Shaw's criminal extortion was indeed within the agency relationship.

■ Under general agency principles, the conduct of a servant is within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." *Local 1814, Int'l Longshoremen's Ass'n v. National Labor Relations Board*, 735 F.2d 1384, 1395 (D.C.Cir.1984) (quoting Restatement (Second) of Agency, § 228(1) at 504 (1957)). The fact that an agent's act may be criminal does not by itself prevent it from falling within the scope of employment, particularly if the agent is "actuated by the principal's business purposes 'to any appreciable extent.' " *Id.*

Hunt has alleged that in March, 1984, Shaw was appointed by Weatherbee and "was acting as the agent of defendants Weatherbee and Bryant in soliciting funds and in all of his acts associated therewith for the so-called 'Local 40 Political Action Fund.' " She has alleged that Bryant, as Financial Secretary of Local 40, was responsible for the collection of monies for the Local 40 Political Action Fund. Hunt has further alleged that she appealed directly to Weatherbee for protection against Shaw's threats and that these appeals were ignored.

■ If proven, these allegations may be sufficient to show that Shaw was acting within the scope of his authority and for the benefit of Local 40. It would be rea-

sonable to infer from Hunt's allegations that Shaw, Weatherbee, and Bryant were acting together to maximize the proceeds for the Local 40 Political Action Fund, and that Weatherbee and Bryant sanctioned Shaw's extortionate acts to further this objective. Given this alleged state of affairs, it would be improper for the Court to determine on a motion to dismiss that neither Weatherbee nor Bryant could be "indictable" under 18 U.S.C. § 1951 or "chargeable" under Mass.Gen.Laws ch. 265, § 25.[8] *See United States v. Local 560*, 550 F.Supp. 511, 518 (D.N.J.1982) (The Hobbs Act, 18 U.S.C. § 1951, has been construed broadly and courts have upheld Hobbs Act prosecutions based upon the loss not only of tangible property but also of intangible "property" rights). Consequently, this Court rules that Hunt has sufficiently alleged two predicate acts by Weatherbee and Bryant.[9]

### 3. *Pattern of Racketeering*

Following the Supreme Court's decision in *Sedima*, Weatherbee and Bryant filed a supplemental brief arguing that even if Hunt has adequately alleged two predicate offenses, those offenses do not constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5). They assert that the two acts are simply isolated incidents, occurring three years apart, which have no relationship to one another.

In *Sedima*, the Supreme Court emphasized that while two predicate acts are necessary to constitute a pattern, they may not be sufficient by themselves: "[I]n common parlance, two of anything do not generally form a 'pattern.' The legislative his-

---

**8.** In *Sedima*, the Supreme Court not only rejected a "prior conviction" requirement for a proceeding under § 1964(c), it also expressed doubt that the predicate acts must be established beyond a reasonable doubt. Although the Court found it unnecessary to decide the issue, it stated: "That the offending conduct is described by reference to criminal statutes does not mean that its occurrence must be established by criminal standards or that the consequences of a finding of liability in a private civil action are identical to the consequences of a criminal conviction." 105 S.Ct. at 3283.

**9.** Weatherbee and Bryant argue that the two alleged predicate acts involve different enterprises—that is, the coercion to withdraw Hunt's criminal complaint involved Local 40, and the sale of raffle tickets involved the Local 40 Political Action Fund. This argument is without merit. Although it is unclear from the present record how the Political Action Fund was organized and what its precise functions were, it certainly is a reasonable inference that the fund was at least an adjunct of Local 40 and that its proceeds were used to benefit the union.

tory supports the view that two isolated acts of racketeering activity do not constitute a pattern." 105 S.Ct. at 3285 n. 14. The Court did not set forth its own definition of "pattern," but referred specifically to two legislative sources for guidance:

> As the senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added).... Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e).

*Id.*

■ In this case, Hunt has alleged that the two predicate acts were simply two examples of a prolonged pattern and practice of sexual harassment, discrimination, and violation of contractual rights. She has included specific allegations of other instances of sexual harassment and discrimination directed toward her personally, and has further alleged that Weatherbee and Bryant knowingly encouraged systematic discrimination against other female members of Local 40. These allegations, viewed in the light most favorable to Hunt, may be sufficient to demonstrate a pattern of racketeering activity. Consequently, the motion to dismiss the civil RICO claims is denied.

### III. *The Civil Rights Claims*

Hunt has brought several claims under the Civil Rights Act of 1971, 42 U.S.C. §§ 1985, 1986. Section 1985 of that Act proscribes five broad classes of conspiratorial activity; one of the five classes is outlawed by § 1985(1), two by § 1985(2), and two by § 1985(3). *See Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983). Section 1986 creates a cause of action against the knowing failure to prevent the commission of any of the wrongful acts described in § 1985.[10]

In Counts V and VI of her complaint, Hunt pleads three causes of action under § 1985. First, she alleges that Weatherbee and Bryant obstructed justice in state court by coercing her to withdraw her criminal complaint against Freeman, in violation of the second part of § 1985(2)[11] Second, Hunt alleges that Bryant and Shaw deprived her of the equal protection of the laws of Massachusetts and the United States by attempting to extort monies from her with a sex-based discriminatory animus, in violation of the first part of § 1985(3).[12] Finally, Hunt alleges that the extortionate acts of Bryant and Shaw vio-

---

10. No claim for relief will lie under § 1986 unless a cause of action can be established under § 1985. *Hahn v. Sargent,* 523 F.2d 461, 469–70 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Therefore, Court VII of Hunt's complaint would not survive the motion to dismiss unless Count V or Court VI survived.

11. Section 1985(2) contains two general sections, which are frequently referred to as the "first part" and the "second part." The second part of § 1985(2) provides: "[I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or

attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws...."

12. Section 1985(3) contains two general sections, which are frequently referred to as the "first part" and the "second part." The first part of § 1985(3) provides: "If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws...."

lated the second part of § 1985(3)[13] by intimidating her in the free exercise of her political views and by impeding her right to support candidates of her choice in federal elections.

### A. Class-Based Animus

The defendants argue as a threshold proposition that there must be allegations of class-based *racial* animus to support a cause of action under § 1985. For support, they rely on *United Bd. of Carpenters and Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Although the Supreme Court in *Scott* held that § 1985(3) did not reach conspiracies motivated by "economic or commercial animus," *id.,* 103 S.Ct. at 3360, it expressly declined to decide whether a conspiracy motivated by other kinds of bias would be actionable under § 1985(3).[14] *Id.* at 3359–60; *see Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (§ 1985(3) requires "some racial, or perhaps otherwise class-based, invidiously

discriminatory animus behind the conspirators' action").

Although the Supreme Court has not decided this issue,[15] the majority rule in the lower federal courts is that sex-based discrimination does fall within the scope of § 1985(3). *See generally* Annot., 46 A.L.R. Fed. 342 (1980). In *Stathos v. Bowden,* 514 F.Supp. 1288 (D.Mass.1981), *aff'd,* 728 F.2d 15 (1st Cir.1984), the court explicitly followed this general rule, commenting that "[t]here is no doubt that purposeful sex discrimination is invidious discrimination" within the meaning of § 1985(3). *Id.* at 1293; *see Daley v. Town of New Durham,* 733 F.2d 4, 7 (1st Cir.1984) (cause of action under § 1985(3) must include allegation of a "conspiracy motivated by a racial, or 'otherwise class-based invidiously discriminatory animus' "); *Harrison v. Brooks,* 519 F.2d 1358, 1360 (1st Cir.1975).

### B. Allegations of Sex-Based Animus

■ The defendants argue that Hunt's allegations of sexually discriminatory ani-

13. The second part of § 1985(3) provides: "[I]f two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy...."

14. The requirement that a plaintiff must plead some kind of class-based animus stems from the language in § 1985 requiring intent to deprive another of "equal protection" or of "equal privileges and immunities." That language appears in only two of the five broad classes of proscribed activities—those of the second part of § 1985(2) and the first part of § 1985(3). *See Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983). In *Kush,* the Supreme Court held that there was no requirement of class-based animus to state a cause of action under the first part of § 1985(2), suggesting that there is also no such showing required under the second part of § 1985(3). Thus, it is unlikely that Hunt is required to plead class-based animus for her cause of action based on interference in federal elections.

15. There are indications that the Supreme Court, if confronted directly with the issue,

would hold that sex-based discrimination falls within the scope of § 1985(3). For example, in *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), a male employee alleged that he had been discharged for supporting female employees. He brought an action under § 1985(3), claiming that he had been the victim of a conspiracy to deprive him of rights secured by Title VII of the Civil Rights Act of 1964. The Court held that § 1985(3) may not be invoked to redress violations of Title VII. Although the majority did not address the class-based animus issue, Justice White (who delivered the majority opinion in *Scott* ) noted in dissent:

> Although *Griffin v. Breckenridge* did not reach the issue whether discrimination on a basis other than race may be vindicated under § 1985(3), the Court correctly assumes that the answer to this question is "Yes." The statute broadly refers to all privileges and immunities, without any limitation as to the class of persons to whom these rights may be granted. It is clear that sex discrimination may be sufficiently invidious to come within the prohibition of § 1985(3)....

442 U.S. at 389 n. 6, 99 S.Ct. at 2357 n. 6 (White, J., dissenting) (citations omitted); *see also Scott,* 103 S.Ct. at 3368 (Blackmun, J., dissenting) ("certain class traits, such as race, religion, sex, and national origin, *per se* " fall within the protections of § 1985(3)).

mus are insufficient to sustain a cause of action under § 1985. They correctly point out that a plaintiff must set forth "more than conclusory allegations, even in civil rights cases." *Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir. 1982) (collecting First Circuit cases). In *Dewey*, the Court of Appeals described the appropriate pleading standard in an action brought under 42 U.S.C. § 1983:

> [A]lthough we must ask whether the "claim" put forward in the complaint is capable of being supported by any conceivable set of facts, we insist that the claim at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why.

694 F.2d at 3.

With respect to the coerced withdrawal of her criminal complaint against Freeman, Hunt has satisfied her minimal pleading burden. She has done more than simply set forth conclusory allegations of discriminatory motives. In particular, she has alleged that at the meeting following the assault Weatherbee and Bryant *"expressed the sexually discriminatory animus of treating the physical victim of an assault as the responsible party solely because of her sex."* (emphasis added). She has further alleged that throughout the period of her employment at the Harvard Square construction site, she was subject to sexual harassment, sex-based isolation, and discrimination in work assignments. This general allegation is supported by further factual allegations relating specific incidents of appalling sexual harassment.

The incident involving the sale of raffle tickets presents a closer question. The facts alleged in the complaint indicate that Shaw, acting for the Local 40 Political Action Fund, threatened Hunt with physical injury and loss of employment if she did not purchase certain raffle tickets. Hunt claims that such threats were made "with malicious intent based upon a sexually discriminatory animus," but she does not include any contemporaneous actions by the defendants that objectively support such animus. Hunt apparently relies on the pri-

or manifestations of sex-based animus, discussed above, to conclude that Shaw's extortionate acts were similarly motivated. That conclusion is certainly conceivable given the extent of discriminatory and harassing actions which allegedly occurred throughout Hunt's association with Local 40. Therefore, Hunt's allegations of discriminatory animus are sufficient to withstand a motion to dismiss.

C. *Allegations of Conspiracy*

The defendants contend that Hunt's allegations of the existence of a conspiracy are insufficient to sustain a § 1985 action. The pleading requirements under § 1985 require "at least minimum factual support of the existence of a conspiracy." *Francis-Sobel v. University of Maine*, 597 F.2d 15, 17 (1st Cir.1979). In *Slotnick v. Staviskey*, 560 F.2d 31 (1st Cir.1977), the Court of Appeals described the standard under § 1983 as follows:

> In an effort to control frivolous conspiracy suits under § 1983, federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy. It has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts.

*Id.* at 33; *see Serrano Medina v. United States*, 709 F.2d 104, 106–107 (1st Cir.1983) (affirming dismissal of § 1985 claim where complaint "[did] not mention a conspiracy or state facts from which a conspiracy might be inferred").

The *Slotnick* case suggests that a complaint alleging conspiracy under the civil rights laws may be required to go beyond the mere "notice pleading" that is usually required of other pleadings under Fed.R. Civ.P. 8. However, the precise contours of the pleading standard in this Circuit are unclear. In particular, it is unclear whether the pleading requirements relating to conspiracy are as strict as those under Fed.

R.Civ.P. 9(b), which provides that the circumstances constituting fraud must be pleaded with particularity. *See Gomez v. Florida State Employment Service,* 417 F.2d 569, 577 n. 32 (5th Cir.1969) ("The idea that the requirement for specificity in the pleading of conspiracy [under § 1985] is like that for pleading fraud is not followed by us."); *Powell v. Workmen's Compensation Board,* 327 F.2d 131, 137 (2d Cir.1964) (complaints based on conspiracies under the civil rights acts must "allege with at least some degree of particularity overt acts which defendant engaged in which were reasonably related to the promotion of the alleged conspiracy").

There are sound reasons not to apply the heightened "particularity" standard for conspiracies that do not themselves involve fraud. "The courts have recognized that the nature of conspiracies often makes it impossible to provide details at the pleading stage and that the pleader should be allowed to resort to the discovery process and not be subjected to a dismissal of his complaint." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1233 (1969); *see Gomez,* 417 F.2d at 577 n. 32.

Even if the pleading requirements are strictly applied in this case, Hunt has sufficiently alleged facts supporting the existence of a conspiracy. With respect to Count V, she has made specific allegations relating to the conduct of Weatherbee and Bryant in coercing her to withdraw her criminal complaint against Freeman. According to her allegations, Weatherbee and Bryant were both present at the meeting in which the coercion took place and they acted in similar fashion toward Hunt. Understandably, Hunt may not be in a position to know whether Weatherbee and Bryant agreed beforehand to act against her, but such lack of knowledge is not fatal to her conspiracy claim. In light of her specific allegations as to the time, place, and nature of the actions of Weatherbee and Bryant, as well as her allegations concerning the discriminatory atmosphere in which she was forced to work, it would be reasonable to infer that there was a conspiracy to act against her.

The incident involving the sale of raffle tickets again presents a much closer question. Count VI alleges that Shaw and Bryant conspired against Hunt, but does not allege any personal involvement by Bryant in the extortion. Nor is there any allegation of an agreement between Bryant and Shaw. In that section of the complaint which describes the raffle ticket incident, ¶¶ 35–50, there is only a single reference to Bryant:

> 37. Said attempted extortion by defendant shop steward Joe Shaw, acting as the agent of defendants Weatherbee and Bryant, included sundry threats of injury to the property and person of the plaintiff to coerce her into purchasing raffle tickets for the so-called "Local 40 Political Action Fund," and thus to extort such money from the plaintiff.

Hunt's conspiracy claim clearly is premised on the alleged relationship between Bryant, in his capacity as a union official who was responsible for the collection of monies for the Local 40 Political Action Fund, and Shaw, who was acting as Bryant's "agent" in soliciting such funds and in "all his acts associated therewith."

The defendants are correct in their assertion that a conspiracy cannot be demonstrated merely by proving that Shaw was an agent of Bryant. An essential element of a conspiracy claim is the existence of an *agreement* between two or more persons to commit an illegal act. *Crowe v. Lucas,* 595 F.2d 985, 993 (5th Cir.1979). However, a plaintiff need not show that such an agreement was express; a conspiracy may be implied from the circumstances. *Dickerson v. United States Steel Corp.,* 439 F.Supp. 55, 67 (E.D.Pa.1977) ("If a party has the potential to stop illegal activity but fails to act to do so, and sits idly by, then that party may be said to have impliedly conspired in such illegalities."). Moreover, the plaintiff is not required to prove exact details of the agreement. A showing of conspiracy "must often be met by circumstantial evidence; conspirators rarely formulate their plans in ways susceptible of proof by direct evidence." *Crowe v. Lucas,* 595 F.2d 985, 993 (5th Cir.1979).

Hunt has alleged that Bryant was directly involved in prior acts of discrimination against her, and that Bryant actually encouraged systematic discrimination against women members of Local 40. In light of these allegations and Bryant's role in collecting monies for the Local 40 Political Action Fund, it would not be unreasonable to infer that Bryant and Shaw conspired against Hunt with respect to the sale of the raffle tickets. Hunt's allegations relating to Count VI are thus sufficient to withstand a motion to dismiss.

## IV. *The Remaining Claims*

Count VII alleges that Weatherbee had actual knowledge of the illegal acts perpetrated against Hunt but refused to take any action to protect her. This claim is made pursuant to 42 U.S.C. § 1986, which provides a separate cause of action for the knowing failure to prevent any of the acts proscribed by § 1985. Because Hunt has stated valid claims under § 1985, Count VII also survives the motion to dismiss. Similarly, the state claims alleged in Counts X–XIII will remain in the case pursuant to the Court's pendent jurisdiction.

For the reasons stated above, the motion to dismiss filed by Weatherbee, Bryant, and Shaw is DENIED.